NIEMEYER ET AL. *v.* McCARTY ET AL.

[No. 27,902. Filed November 22, 1943.]

*Alex Pendleton, John W. Lyddick,* and *Harry Long,* all of Gary, for appellants.

*Hanley & Hanley* and *Abe Halleck,* all of Rensselaer, and *E. Miles Norton,* of Crown Point, for appellees.

FANSLER, C. J.—This is an action by Ernest B. McCarty against the appellants and the appellee Harry Boesel for damages for assault and battery. There was a trial by jury, and a verdict and judgment against the defendants for $3,000. The appellee Harry Boesel did not join in the appeal.

Error is assigned upon the overruling of appellants' motion for a new trial.

The appellants contend that the evidence fails to show

that the defendants acted jointly or that there was concerted action. This contention seems to be based upon the view that, before there could be joint liability, the defendants "must have done an act which was planned, arranged, adjusted, agreed upon and settled between themselves prior to the commission of the tort." We cannot agree with this view of the law. See *Little* v. *Tingle* (1866), 26 Ind. 168.

The court sustained an objection to the introduction in evidence of certain records of a contempt proceeding in which it is said that the plaintiff was convicted of contempt of court for perjury. This evidence was offered for the purpose of affecting the credibility of the plaintiff as a witness. It is well settled that ordinarily a witness cannot be impeached by proof of particular extraneous acts of misconduct. Section 2-1725, Burns' 1933, § 312, Baldwin's 1934, Acts 1881 (Sp. Sess.), ch. 38, § 284, p. 240, provides: "Any fact which might, heretofore, be shown to render a witness incompetent, may be hereafter shown to affect his credibility." This has reference to § 79, p. 999, Rev. St. 1843, which defined infamous crimes and rendered those convicted of such incompetent as witnesses. See *Dotterer* v. *State* (1909), 172 Ind. 357, 88 N. E. 689, 30 L. R. A. (N. S.) 846. Among the crimes defined was "wilful and corrupt perjury." In this State all crimes are statutory, and all who are accused of crime are entitled to a trial by jury, and there can be no conviction of crime except by a jury unless a jury is waived. Contempt of court is not a crime, although the same act may be a crime and may also be a contempt of court. It follows that the statute quoted above furnishes no basis for the admission of the record of the contempt proceedings even if it is a final judgment which is questioned. There was no error in excluding this record.

The appellants offered to prove that the plaintiff's reputation for peace and quietude was bad. The complaint alleges that the defendants attacked the plaintiff. The defendants filed an affirmative answer alleging that the plaintiff was the aggressor. The plaintiff testified that the defendants were the aggressors.

Professor Wigmore says:

"It is to-day generally said that (subject to specific exceptions, some of them doubtful) *the character of a party in a civil cause is inadmissible; i. e.* that it cannot be used, as used for or against a defendant ·in a criminal case, to indicate the likelihood that the act in issue was or was not done. This is laid down as a general rule, to which a specific exception, if any, must be clearly made out.

"This result, to be sure, was not always so clearly an accepted one. But it has long been a rule generally recognized,—subject, however, to exceptions which are being constantly enlarged, as they should be.

"The reasons for this exclusion differ wholly from the reasons forbidding the prosecution's use of the character of an accused person; the two rules have nothing in common. The reasons advanced for the present rule are of two chief sorts:

"(1) A party's character is *usually of no probative value.* Where the issue is whether a contract was made or broken, whether money was paid or property improved by mistake, whether goods were illegally converted or a libel published, there no moral quality in the act alleged, or at any rate any moral quality that may have been present is ignored by the law; and moral character can therefore throw no light on the probability of doing or not doing. In torts involving violence or actual fraud, such a moral quality may appear; but,

apart from these exceptions, it is either nonexistent or immaterial."

Wigmore on Evidence (3rd Ed.), Vol. 1, § 64, p. 472 et seq.

The author points out that this together with the policy of avoiding confusion of the issues has been relied upon to justify the general policy of excluding an investigation of the character of the parties in a civil cause. The author says: "It may, however, be maintained that the reasons of policy apply in ordinary civil cases only; and that where a moral intent is marked and prominent in the nature of the issue, the defendant's good moral character should be received, as in criminal cases. This view has in more modern opinions gained ground, and is worth recognizing." It may be noted that the reasoning applies to bad character as well as good. The author cites *Hein* v. *Holdridge* (1900), 78 Minn. 468, 472, 81 N. W. 522, 523, in which the court said: "There would seem to be no logical reason why the same rule should not apply to civil actions in which the defendant is charged with a crime," and *McClure* v. *State Banking Co.* (1909), 6 Ga. App. 303, 304, 65 S. E. 33. In the later case the defendant was sued on a note which he claimed was a forgery. He offered to prove that the general reputation of the payee was bad and that he bore the reputation of having engaged in the business of committing forgeries. The court said: "Frequently this kind of evidence has a distinct relevancy and a high degree of probative value, because it tends to make the question involved in the issue more or less probable in favor of one side of the case or the other." In *Cain et al.* v. *Skillin* (1929), 219 Ala. 228, 232, 121 So. 521, 525, 64 A. L. R. 1022, 1027, 1028, a civil action for damages for assault and battery, in which the plaintiff contended that the defendant was the

aggressor, and the defendant contended that the plaintiff was the aggressor, it was held error to exclude evidence of the bad reputation of the plaintiff. The court held that such evidence was competent "in connection with self-defense and after overt act shown, where it is doubtful which party commenced the fray, and to show the *quo animo* of the assailant." The court said: "We can see no difference in principle on this subject, whether it is a criminal or a civil case."

In the early case of *Byrket* v. *Monohon* (1844), 7 Blackf. 83, 85, an action for slander for charging the plaintiff with perjury, there was an answer that the charge was true. The court said: "The defendant undertook to prove that the plaintiff had committed perjury; and the jury, in making up their minds on the subject, had surely a right to take into consideration, if the defense was not clearly proved, the general good character of the plaintiff for truth. Indeed, it would seem that such evidence ought never to be withdrawn from the jury, though it will often be rendered of no avail by the nature of the defendant's evidence. If the plaintiff were indicted for the offence, it would be proper for the jury, in making up their verdict, to take into consideration his general good character for truth; . . . and the law must be the same in the case before us." This case has often been cited with approval by this court, and never has doubt been expressed as to the soundness of the conclusion reached. Among the cases in which it has been cited with approval is *Gebhart* v. *Burkett* (1877), 57 Ind. 378, 379, 380, 381, 382, 26 Am. Rep. 61, 62, 63. The action was for "wilfully, unlawfully and maliciously" burning a barn. Greenleaf is quoted as follows: " 'In civil cases, such evidence is not admitted, unless the nature of the action involves the general character of the party, or

goes directly to affect it. . . . And in all cases, where evidence is admitted touching the general character of the party, it ought manifestly to have reference to the nature of the charge against him.' " This statement conforms to the reasoning of the modern cases in which character evidence is admitted. The defendant had offered to prove his general good character as part of his defense. The court said:

"*Byrket* v. *Monohon*, 7 Blackf. 83, was a case of slander for charging the plaintiff with perjury; plea, justification. Here character is put directly in issue, and the corrupt intent is necessary to the defence. The same in *Miles* v. *Vanhorn*, 17 Ind. 245.

"In the case of *Haun* v. *Wilson*, 28 Ind. 296, which was for slander founded on words charging the plaintiff with larceny, evidence of good character was held inadmissible, because there was no answer in justification putting character in issue. . . ."

Here is recognition that if in defense it is asserted that the plaintiff was guilty of a crime his character is in issue, but the court concluded: "In the case before us, it is apparent that the general character of appellant is not involved. Motive or intent constitutes no element in the wrong complained of. The injury is the same, whether committed with or without malice. True, the appellee charges the appellant with maliciously burning the barn and its contents, but it was not necessary to prove the malice. If he proved the burning to be unlawful, it was sufficient as to that part of the case. General good character is no defence to the particular act charged." We are concerned with the principle announced, and not with the result reached. If the result is wrong, it is because of the misapplication of a sound principle. In the opinion there is a further quotation from Mr. Greenleaf as follows: " 'This kind of evi-

dence is therefore rejected, wherever the general character is involved by the plea only, and not by the nature of the action. Nor is it received in actions of assault and battery; nor in assumpsit; nor in trespass on the case for malicious prosecution; nor in an information for a penalty for violation of the civil, police, or revenue laws. . . .' " The use of this quotation no doubt accounts for the citation of this case in support of the view that evidence of character is incompetent in civil actions for assault and battery. No such question was before the court. It is not clear that the lengthy quotations from Mr. Greenleaf were approved in their entirety. In fact, doubt at least is expressed as to the soundness of some of the language quoted.

In *Downey* v. *Dillon* (1876), 52 Ind. 442, an action for libel and slander, where there was an answer of justification, it was held that character evidence was properly admitted. That decision is supported by a quotation from *Byrket* v. *Monohon, supra*. In *Elliott et al.* v. *Russell* (1884), 92 Ind. 526, 531, Ludwell Elliott was a defendant. It was alleged in the complaint that he and other defendants, conspiring together, committed an assault and battery upon the plaintiff by hanging him by the neck in order to extort from him a confession that he had committed certain larcenies. The court said: "Appellant Ludwell Elliott offered to prove his good reputation as a peaceable and orderly citizen. There was no error in the exclusion of this testimony. *Gebhart* v. *Burkett*, 57 Ind. 378 (26 Am. R. 61)." This is all that is said upon the subject. The court must have based its decision upon the quotation from Mr. Greenleaf above referred to, for otherwise the decision finds no support in the case cited.

*Sturgeon* v. *Sturgeon* (1892), 4 Ind. App. 232, 30 N. E. 805, was a civil action for an assault and battery.

The defendant was the father-in-law of the plaintiff. It does not appear whether or not the defendant denied the assault and battery, or whether there was any issue of self-defense, or contention that the daughter-in-law was the aggressor. The defendant offered to prove his good reputation for peace and quietude. It was held that the evidence was properly rejected. *Treschman* v. *Treschman* (1902), 28 Ind. App. 206, 61 N. E. 961, involved the chastisement of a thirteen year old child by her stepmother. The stepmother denied that she had committed the assault and battery, and offered to prove her general good reputation for peace and quiet. The court held that there was no error in refusing the evidence. Both cases were decided upon authority of *Gebhart* v. *Burkett, supra,* and *Elliott* v. *Russell, supra.* The result reached in the first of these cases may have been based upon the view that, since the assault and battery was not denied, it was immaterial whether the defendant was of good or bad character. The result in the second case is not supported by the cases cited.

It is settled beyond controversy that in a criminal action for homicide or assault and battery, where the defense is self-defense and it is asserted that the person charged to have been assaulted was the aggressor, the defendant may introduce evidence of his good reputation for peace and quiet, and of the bad reputation of his adversary for peace and quiet. This evidence goes to the jury to be weighed and considered with the other facts and circumstances in evidence for the purpose of determining who was the aggressor. We held in *Sweazy* v. *State* (1937), 210 Ind. 674, 1 N. E. (2d) 992, 5 N. E. (2d) 511, that where a defendant charged with murder claimed, and testified in his own defense, that the deceased made an attack upon

him, the reputation of the deceased for peace and quietude was put in issue, and it was competent for the State in rebuttal to introduce evidence of his good reputation. In a criminal case the evidence is permitted as tending to prove a substantive fact in issue. It is not extraneous or collateral. We can conceive of no reason why evidence which is held to establish a fact in issue in a criminal case should be excluded in a civil case where the same fact is in issue. In a criminal action for assault and battery, the character of the injured person is only in issue when it is contended that he was the aggressor, or where the plea is self-defense. But where such a defense is made, the character of the injured person is in issue. In a civil action the plaintiff corresponds to the injured person in a criminal action. Our conclusions are consistent with the principles announced in *Byrket* v. *Monohon, supra,* and *Gebhart* v. *Burkett, supra.* These cases have never been overruled, and the correctness of the principles announced has never been questioned. When they have been cited in support of a result inconsistent with the principles announced, there seems to have been a misapprehension of the effect of the cases, and not an intention to overrule them or depart from the principles declared.

It is charged here that the defendants committed an assault and battery upon the plaintiff. They defend upon the ground that the plaintiff was the aggressor, and introduce evidence tending to support this charge. It was error to exclude the testimony of the bad reputation of the plaintiff for peace and quiet.

On cross-examination, the plaintiff McCarty was asked: "You have paid a fine for assault and battery

have you not?" And: "You have been found guilty of contempt of court for perjury, have you not?" Objections were sustained to both questions, and the ruling is assigned as error. It is contended that the payment of fine would not be legal evidence that a proper judgment of conviction was rendered; that the question should have been: "Were you convicted of assault and battery?" The objection is technical. The question would be better in the form suggested by the appellee. It is well settled, and seems to be conceded by appellee, that, in cross-examination, a witness may be required to answer as to previous convictions. Concerning the second question, the appellee says there was no proof that he had been convicted. It is not necessary to introduce proof of a conviction as a basis for asking a witness in cross-examination whether he has been convicted. It is true that a judgment holding a person in contempt of court is not a conviction of a crime, but, where the basis of the judgment in contempt is perjury, it would seem pertinent upon the question of credibility. If, as appellee suggests, there was no judgment in the contempt proceeding, his remedy was to answer the question in the negative. In *Dotterer* v. *State, supra,* it is said (page 362 of 172 Ind., page 692 of 88 N. E., page 852 of 30 L. R. A. [N. S.]): "It is a well-recognized rule that any fact tending to impair the credibility of the witness, by showing his interest, bias, ignorance, motives, or that he is depraved in character, may be shown on cross-examination, but the extent to which such cross-examination may be carried is within the sound discretion of the court. (Authorities.)" See, also, *Grose* v. *State* (1926), 197 Ind. 331, 149 N. E. 722. But the statement that "the extent to which such cross-examination may be carried is within the sound discretion of

the court," must not be construed as authorizing the entire exclusion of such testimony in the trial court's discretion, and the cases referred to do not so hold. In *City of South Bend* v. *Hardy* (1884), 98 Ind. 577, 578, much is said about the discretion of the court in limiting a cross-examination designed to affect the credibility of a witness. An examination of the case discloses that the witness had already testified in cross-examination "that he did not conspire with others to defraud a life insurance company during his absence." Objections were sustained to further questions on the subject. The action was one for damages for personal injury. The subject of the cross-examination was designed to show that the witness was depraved in character. The court in its discretion limited the cross-examination upon the question of life insurance and the conspiracy to defraud and collect to the one question and answer in which the plaintiff said he did not conspire with others to defraud the insurance company. This court sustained the trial court's ruling as a proper exercise of discretion. The opinion does not hold that the court might have excluded all questions concerning the life insurance and the conspiracy to defraud, since no such question was presented.

Since the case is to be tried again, we make no comment upon the amount of the verdict.

What we have already said disposes of many of the questions involved in the instructions, and the others are not likely to arise again.

Judgment reversed, with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 51 N. E. (2d) 365.