144 So.2d 68 (1962)
Bobby Gene BALLENGEE, Appellant,
v.
STATE of Florida, Appellee.
No. 2980.
District Court of Appeal of Florida. Second District.
August 8, 1962.
Rehearing Denied September 5, 1962.
*69 Delbert L. McLaughlin, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
SHANNON, Chief Judge.
Appellant, a witness for the state in a criminal prosecution below, seeks review of a contempt conviction and a five year sentence in the state penitentiary pursuant thereto.
On September 15, 1961, the appellant was called as a witness for the state in the trial of Robert Webber and Roger Gay for the crime of larceny of cattle. Previous to that trial the appellant had been charged along with Webber and Gay with larceny of cattle. To the charge he entered a plea of guilty and was sentenced to a two year term in the state prison.
During the direct examination of the appellant he refused to answer the question, "Bobby, do you know Robert Webber and Roger Gay?" The ground assigned for his refusal to answer was that he might thereby incriminate himself. The trial court directed the appellant to answer the question and out of the jury's presence informed appellant that the answer to the question would not incriminate him and that failing to answer it he would be in contempt of court. Appellant again refused to answer the question. The court responded that he was in contempt of court if he refused to answer, inquiring as to whether or not the witness understood that clearly. There then followed a discussion between counsel for the state and the defendants and the court, and the court then repeated the statement that if the witness refused to answer the court would hold him in contempt and directed the question to be propounded again. But, after the question was repeated, the witness again stated that he refused to testify. The court adjudged the witness in contempt and then inquired of the state as to whether or not it wished to propound other questions. On motion of the state, the court declared the witness a hostile witness and the witness admitted that he had plead guilty to stealing a cow at a certain time and place, but stated that he did not remember as to the participation of the two defendants, nor as to his confession implicating the two defendants, stating that he came off a drunk, the officers questioned him every day, he was sick and didn't remember what he told the officers. The state then announced it had no further testimony to offer and rested its *70 case against Webber and Gay. The court granted directed verdicts for the defendants. Subsequently, on the same day, the court sentenced the witness to serve five years in the state prison to run consecutively with the sentence previously pronounced on the plea of guilty of larceny.
We shall discuss two of the points raised by the appellant herein, namely, 1) whether or not the trial court erred in ordering that the contempt sentence be served in the state prison instead of the county jail; and 2) whether or not error was committed by failure to inform the appellant of his immunity from prosecution under Sec. 932.29, Fla. Stat., F.S.A. We feel that error was committed in each of these respects and we likewise feel it necessary to discuss them both.
Contempt is generally divided into two categories  civil and criminal. "Criminal contempt proceedings are those brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its orders. Civil contempt proceedings are those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of such parties." 12 Am.Jur., Contempt, Sec. 6. The two are further distinguished in that the former is punitive in nature while the latter is coercive. Further, those acts of contempt committed in the presence of the court are said to be direct contempts. It is clear therefore that the contempt proceeding in the present case belongs to that group classified as direct criminal contempts.
The term "criminal contempt" might be somewhat misleading because of the fact that a prosecution for criminal contempt is not in itself a criminal case but a proceeding inherent in the court. It is sui generis and is not, therefore, a crime. See State ex rel. Beck v. Lush, 1959, 168 Neb. 367, 95 N.W.2d 695, 72 A.L.R.2d 426; Osborne v. Owsley, 1954, 364 Mo. 544, 264 S.W.2d 332, 38 A.L.R.2d 1128; and Niemeyer v. McCarty, 1943, 221 Ind. 688, 51 N.E.2d 365, 154 A.L.R. 115. Illustrative of this proposition, ancient in our law, is the fact that a prosecution for direct criminal contempt is a summary proceeding, the institution of which does not require the filing of an indictment or information. Likewise, the contemnor is not entitled to a trial by jury although the Supreme Court of Florida, in Demetree v. State ex rel. Marsh, Fla. 1956, 89 So.2d 498, held that in a criminal contempt proceeding the contemnor is presumed innocent until proved guilty beyond a reasonable doubt and cannot be compelled to testify against himself. As a further example of the independent nature of contempt proceedings, we note that a court of chancery, which is not a court of criminal jurisdiction, possesses the inherent power to adjudicate a person guilty of contempt and order him incarcerated. See Demetree v. State, supra.
Sec. 38.22, Fla. Stat., F.S.A., provides: "Every court may punish contempts against it, whether such contempts be direct, indirect, or constructive, and in every such proceeding the court shall proceed to hear and determine all questions of law and fact, but the punishment imposed by a justice of the peace shall not exceed twenty dollars fine, or twenty-four hours' imprisonment." In discussing this statute, the Supreme Court, in State ex rel. Franks v. Clark, Fla. 1950, 46 So.2d 488, stated:
"* * * We take notice of it but do not construe it inasmuch as we are able to uphold the order without benefit of the legislative act. A grant of power to a court is tempting but the acknowledgment of it presupposes the authority to withdraw same. As we have said, the power to punish for contempt is a necessary and inherent one in a court. Therefore we take notice of the statute but decline to place a construction upon it."
Appellant relies on Sec. 775.06, Fla. Stat., F.S.A., for his contention that the trial judge erred in ordering that his sentence *71 be served in the state prison. This statute reads as follows:
"Whenever punishment by imprisonment is prescribed, and the said imprisonment is not expressly directed to be in the state prison, it shall be taken and held to be imprisonment in the county jail, and whenever the punishment is prescribed to be fine or imprisonment (whether in the state prison or county jail), in the alternative, the court may, in its discretion, proceed to punish by both fine and such imprisonment."
This chapter of the statutes is applicable only to crimes, which include both felonies and misdemeanors, and is not, therefore, applicable to the instant case. See Ducksworth v. Boyer, Fla. 1960, 125 So.2d 844.
We conclude, however, that the very nature of the contempt proceeding dictates that for the orderly dispensation of justice in vindication of judicial dignity, terms of imprisonment for such contempts should be served in the county jail of the county in which the particular court involved is located, notwithstanding the absence of legislative pronouncement.
There is present, however, a more basic ground which dictates a reversal of the contempt adjudication herein, and that is, the judge below erred in failing to inform the appellant of his immunity under Sec. 932.29, Fla. Stat., F.S.A., which reads:
"No person shall be excused from attending or testifying, or producing any book, paper or other document before any court upon any investigation, proceeding or trial, for a violation of any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."
The personal right against self-incrimination is a privilege provided for in the organic law of this jurisdiction, namely, Sec. 12 of the Declaration of Rights, Florida Constitution, F.S.A. The legislature, however, is empowered to deprive a witness of this constitutional privilege by according him complete immunity from prosecution for the offense to which the testimony relates. Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. When a witness is called upon to give testimony with reference to any of the five categories of crimes enumerated in Sec. 932.29, supra, he is not excused from testifying on the ground that the evidence tends to convict him of a crime. State v. Hancock, 1941, 146 Fla. 693, 1 So.2d 609. But "[w]hen the witness gives testimony responsive to questions which are relevant to such subject matter, the witness is free forever from being subjected to a penalty, forfeiture or prosecution for any offense substantially connected with the transaction, matter or thing concerning which he testified if any testimony so given in such inquiry constitutes a link in the chain of evidence needed to prosecute such witness thereafter charged for such offense revealed by testimony he was required to give, whether such testimony is used or not." State ex rel. Mitchell v. Kelly, Fla. 1954, 71 So.2d 887.
The subject matter of the trial in the instant case, wherein appellant was called upon to give testimony, involved the offense of larceny and, therefore, the statute was applicable.
*72 In the early case of Ex parte Senior, 1896, 37 Fla. 1, 19 So. 652, 32 L.R.A. 133, the Supreme Court of Florida stated:
"* * * While the witness must judge of the effect of his answer, and should not be required to explain how it will criminate him, yet the court must determine, under all the circumstances of the case, whether such will be its tendency from the question asked; and where, from the nature of the investigation and the character of the testimony sought, it reasonably appears that the answer may criminate, or tend to criminate, the witness has the right to claim his privilege, and is not bound to answer. * * *"
See also Lorenzo v. Blackburn, Fla. 1954, 74 So.2d 289, 291. When, however, a witness, who is before the court is directed by the court to answer a question, he asserts his privilege against self-incrimination at his peril, for if his refusal is unjustified, he may be punished for contempt of court. Brizzie v. State, Fla.App. 1960, 120 So.2d 27.
In the instant case, the appellant, who was a witness, was asked if he knew the defendants and was then informed by the trial judge that the answer to that question would not incriminate him. We are unable to find that the appellant's refusal to answer the question propounded was unjustified. He was, we assume, claiming his privilege against self-incrimination in good faith. Therefore, upon appellant's refusal to testify, the trial court should have informed him of the provisions of Sec. 932.29, supra, and that, because of the statutory immunity, the answer to the question would not tend to have an incriminating effect. Failing then to answer, the appellant would properly have been adjudged in contempt, the court having determined that the incriminating effect of the answer was negatived by operation of the statute, and the witness having had an opportunity to fully appreciate the effect of his conduct. See Ex parte Senior, supra. We therefore hold that the trial judge was in error in adjudging appellant in contempt under the circumstances of the instant case. It might be well to note that even had we not found error in the contempt adjudication, it would have been necessary to reverse the sentence imposed in this case on the ground of excessiveness because for the reasons we have just discussed, the severity of the five-year prison sentence was not justified by the gravity of the offense. See Neering v. State, Fla.App. 1962, 141 So.2d 615.
For the reasons stated, the judgment and sentence appealed is hereby reversed.
SMITH, J., concurs.
ELMORE, FRANK H., Associate Judge, concurs specially.
ELMORE, FRANK H., Associate Judge (concurring specially).
I concur in the judgment of reversal and in the reasons therefor but am moved to discuss briefly the concluding phase of the opinion.
In the case of In re Michael in 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (from which appellant quoted inaccurately in his brief) the Supreme Court of the United States said:
"Not very long ago we had occasion to point out that the Act of 1831, 4 Stat. 487, from which Sec. 268 of the Judicial Code derives, represented a deliberate Congressional purpose drastically to curtail the range of conduct which Courts could punish as contempt. Nye v. United States, 313 U.S. 33, 44-48, 61 S.Ct. 810, 85 L.Ed. 1172. True, the Act of 1831 carries upon its face the purpose to leave the courts ample power to protect the administration of *73 justice against immediate interruption of its business. But the references to that Act's history in the Nye case, supra, reveal a Congressional intent to safeguard constitutional procedures by limiting courts, as Congress is limited in contempt cases, to `the least possible power adequate to the end proposed.' Anderson v. Dunn, 6 Wheat. 204, 231, 5 L.Ed. 242. The exercise by federal courts of any broader contempt power than this would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury. It is in this Constitutional setting that we must resolve the issues here raised."
Unlike the United States, there is no statute in the State of Florida which limits the power of a court of competent jurisdiction to punish for contempt. (The limitation of Section F.S. 38.22 F.S.A. 1961 applies only to justices of the peace.) Thus, the power should be exercised with care and restraint as enjoined on federal courts by Mr. Justice Black in In re Michael, supra.
"Probably the most often quoted precedent of the law of contempt," so characterized by Mr. Justice Thornal in Demetree v. State ex rel. Marsh, Fla., 89 So.2d 498, is that of the case of Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A., N.S. 874. In that decision the United States Supreme Court, in distinguishing civil and criminal contempts, said that "for criminal contempt the sentence is punitive, to vindicate the authority of the court."
And in Ex Parte Earman, 85 Fla. 297, 95 So. 755, 31 A.L.R. 1226 the Supreme Court of Florida said:
"Punishment for contempt of court is allowed to be imposed, not to satisfy an offended judge, but to vindicate the authority and dignity of the judicial office; and the penalty should have reference to the nature and enormity of the act complained of and to the wrong done to the court."
In the Demetree case, supra, the Court said:
"We ourselves have suggested that the power to punish for contempt should be cautiously and sparingly exercised. Seaboard Air Line Ry. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529. Despite this admonition of caution, which historically our courts have observed, the power to punish for violation of a valid subsisting order of a court of competent jurisdiction necessarily inheres in our judicial system." (Emphasis supplied.)
Criminal contempt originally was a common law offense and was punished severely. But today sentences for criminal contempt in excess of six months are infrequent. The longest term in any case cited by either party was for four years. If the State had found a precedent for a more severe sentence, surely it would have cited the authority. The gravity of the offense did not justify the severity of the sentence. Instead of "vindicating the authority and dignity of the judicial office," it was so grossly excessive as to derogate from judicial dignity.[1] Were there no other assignments of error I would reverse on this ground alone.
NOTES
[1] All trial judges should heed the admonition of Edward J. Devitt, Chief Judge, U.S. District Court for the District of Minnesota, in his TEN COMMANDMENTS FOR THE NEW JUDGE, 46 A.B.A.J., December 1961.

"EIGHTH COMMANDMENT. Don't impose long sentences. A short sentence will most likely accomplish the same objective. It is primarily the fact of incarceration, not the length of it, which best serves the ends of justice. Long sentences may well overpunish a man and so embitter and discourage him that he loses his desire for rehabilitation."