Charles CHAPMAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–684A156.

Court of Appeals of Indiana,
Fourth District.

Oct. 11, 1984.

Jack E. Roebel, Allen County Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

The defendant, Charles Chapman, appeals his conviction in a jury trial for battery, a Class C felony under IND.CODE 35–42–2–1(3) (1982). Defendant admitted to cutting the victim, Preston "Pete" Pearson, with a knife, but claimed Pearson was the aggressor and the cutting was an act of self-defense. The only issue raised on this appeal is whether the trial court erred in excluding evidence offered by defendant of prior specific acts of violence committed by Pearson. In his offers of proof, defense counsel insisted the excluded evidence was offered solely for the purpose of corroborating previously admitted evidence that Pearson was the aggressor in the encounter that led to his serious injuries. We hold that the trial court was within its discretion in excluding this evidence, and, therefore, we affirm.

### FACTS

At about 7:00 P.M. on July 1, 1983, Pearson was drinking a beer on the porch of a house occupied by a woman identified only as Big Mama. Her porch apparently was a meeting place for a number of locals to talk, drink, and play cards. Several people were present when defendant walked up to the porch and either demanded or asked that Pearson give him a beer, which Pearson declined to do. It is undisputed that defendant and Pearson did not know each other prior to this meeting. An initial argument arose between the two, which was broken up by those present when Big Mama declared there would be no fighting on her porch. Defendant and Pearson encountered one another again, several minutes later, while Pearson was in or near a friend's car, parked across the street from Big Mama's. Defendant approached Pearson, either to repeat his demand for a beer or to apologize for the earlier dispute. During this second encounter, defendant cut Pearson across the neck and arm with a Barlow knife. Pearson's friend drove him to the hospital, where approximately ninety stitches were required to close the wounds.

While the testimony of the two state's witnesses and the several defense witnesses contrast rather sharply regarding the events leading up to the battery, we note that before attempting to introduce the evidence defendant alleges was erroneously excluded, he presented appreciable evidence in support of his claim of self-defense. Although Pearson and the second state's witness both testified Pearson was unarmed at the time defendant cut him and made no aggressive moves toward defendant to justify the contention that Pearson was the aggressor (indeed, both testified Pearson was sitting inside the car at the time he was cut), three of the defense witnesses, defendant included, testified they saw Pearson pull a utility knife on defendant during the initial argument on Big Mama's porch. Defendant also testified that during the second encounter, Pearson forced defendant to defend himself by lunging at defendant with such a knife, which testimony was corroborated by another defense witness.

After presenting this evidence, defendant called three witnesses whose testimony was intended to corroborate defendant's earlier evidence that Pearson had been the aggressor. Betty Farris, a former girl-

friend of Pearson's, testified Pearson had beaten her at least three times during the course of their relationship, and she had seen him threaten a neighbor boy with a club. She also gave her opinion that Pearson had a violent character when intoxicated, and she had seen him quite intoxicated about two hours before the events at Big Mama's house. Duane Garrett, Betty Farris's son, said he saw Pearson beat his mother four or five times and opined that Pearson was a very violent person when intoxicated. However, the trial court sustained the state's objection to defense counsel's questions concerning a "typical" beating and the last beating Garrett had seen Pearson administer to Betty Farris. Finally, the defense called Pearson himself as a witness. Pearson admitted beating Betty Farris two or three times; he admitted beating another former girlfriend with a broom handle; he admitted having approximately five convictions for battery; but when defense counsel asked questions intended to elicit testimony from Pearson concerning two separate and unrelated acts of violence that were not reduced to convictions,[1] the state objected and was sustained by the trial court each time. Defense counsel preserved appeal on the excluded testimony with proper offers of proof, stating the evidence would corroborate earlier testimony that Pearson had been the aggressor in the second encounter with defendant. On appeal, defendant alleges the trial court erroneously excluded Garrett's and Pearson's proffered testimony concerning acts of violence committed by Pearson. We disagree, and, therefore, we affirm.

### DECISION

■ As a general rule, of course, evidence of a person's character, however adduced, is not admissible to prove that person acted in a manner consistent with that character on a particular occasion. McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE § 188 (2d ed. 1972). Indiana cases, however, recognize an exception to this general rule in homicide and battery cases where the defendant raises the issue of self-defense.[2] *See Teague v. State*, (1978) 269 Ind. 103, 116–16, 379 N.E.2d 418, 424 (homicide); *Bates v. State*, (1971) 256 Ind. 490, 492–93, 269 N.E.2d 749, 750 (assault and battery). There are, however, two crucial distinctions to be made in such cases where the defendant attempts to introduce evidence of the victim's violent character in support of his claim of self-defense.

■ First, one must distinguish between the two *purposes* for which evidence of the violent character of the victim may be introduced. One purpose is to show that at the time he acted, the defendant had a reasonable fear of the victim, and, thus, reasonably believed in the necessity of defending himself. The second purpose is to show that, more probably than not, the victim was the initial aggressor in his encounter with the defendant, placing the defendant in the position of having to defend himself.

■ The second crucial distinction required in self-defense cases involves the *types of proof* by which the victim's violent character may be evidenced.

"These types are (a) testimony as to the conduct of the person in question as reflecting his character, and (b) testimony of a witness as to his opinion of the person's character based on observation, and (c) testimony as to his reputation. These are listed in the order of their pungency and persuasiveness. In the

---

1. In his offer of proof, defense counsel stated that, had he been allowed to continue his questioning of Pearson, he would have elicited testimony concerning one incident in which Pearson threatened to kill the employees and customers in a restaurant, and another incident in which Pearson struck a former girlfriend's daughter in the mouth with a broken beer bottle.

2. Inasmuch as homicide, IND.CODE § 35–42–1–1 to –6 (1982), and battery, *id.* § 35–42–2–1, are both offenses against the person to which the defense of self-defense, *id.* § 35–41–3–2, may be raised, we believe that pronouncements of the law of self-defense found in cases involving one type of offense are equally applicable to cases involving the other.

same order, they differ in their tendency to arouse undue prejudice, to confuse and distract, to engender time-consuming side issues and to create a risk of unfair surprise. Modern common law doctrine makes the neutral and unexciting reputation evidence the preferred type, which will usually be accepted where character evidence can come in at all, whereas the other two, when they are received at all, are received only in limited and defined situations."

McCORMICK, *supra*, § 186 at 443 (footnotes omitted).

■ Putting aside, for the moment, this second distinction, we note that the State argues the trial court properly excluded the testimony in question because defendant admits he did not know of Pearson's violent propensities at the time of their encounter, and, without such knowledge, he could not use the testimony to show he was reasonably placed in fear of Pearson at the time he allegedly acted in self-defense. *See McCraney v. State*, (1983) Ind., 447 N.E.2d 589; *French v. State*, (1980) 273 Ind. 251, 403 N.E.2d 821; *Schmanski v. State*, (1979) 270 Ind. 331, 385 N.E.2d 1122; *Bates v. State*, (1971) 256 Ind. 490, 269 N.E.2d 749; *McKee v. State*, (1926) 198 Ind. 590, 154 N.E. 372. The State's argument embraces what appears to be a common failure to distinguish the purposes for which evidence of the violent character of the victim of a battery or homicide may be introduced. *See People v. Buchanan*, (1980) 91 Ill.App.3d 13, 46 Ill.Dec. 540, 414 N.E.2d 262; *Annot.*, 1 A.L.R.3d 571, 601 (1965). The Indiana cases cited by the State do support the proposition that

"when there has been evidence introduced that the accused was exercising his right of self-defense, the decedent's reputation and character for peace and quietude, *if known to the accused at the time he acted*, becomes relevant upon the issue of *whether or not he believed himself to be in danger* and the reasonableness of his assessment. *Schmanski v. State*, (1979) Ind. [270 Ind. 331], 385 N.E.2d 1122, 1125; *McKee v. State*, (1926) 198 Ind. 590, 598, 154 N.E.2d 372, 375."

*French*, 403 N.E.2d at 825 (emphasis added). Thus, evidence of the defendant's knowledge of the victim's character is a foundational requirement to the introduction of evidence of the violent character of the victim where the purpose of such evidence is to show the defendant's reasonable fear of the victim in support of his claim of self-defense.[3]

■ In his offer of proof, however, defense counsel made it clear he was offering the excluded evidence of Pearson's violent acts for the sole purpose of proving to the jury that it was more probable than not that Pearson was the aggressor against defendant, supporting defendant's claim of self-defense. Indiana cases indicate that evidence of a battery victim's reputation for violence is admissible for the purpose of showing that the victim was the aggressor. In a civil battery case, *Niemeyer v. McCarty*, (1943) 221 Ind. 688, 51 N.E.2d 365, *overruled on other grounds*, our supreme court stated:

"It is settled beyond controversy that in a criminal action for homicide or as-

---

**3.** In *McKinley v. State*, (1984) Ind.App., 465 N.E.2d 742, an attempted battery prosecution, the defendant, McKinely, alleged the trial court erred in unduly restricting discovery by refusing to allow him access to the service and personnel records of his intended victim, an off-duty policeman. McKinley contended these records might have revealed evidence of the victim's propensity for violence, and, thus, would have been relevant to support McKinley's claim of self-defense. We disagreed, stating: "Any past episodes of violent behavior on [the intended victim's] part would be relevant to the issue of self-defense only if McKinley had knowledge of

them at the time of the incident." *Id.* at 747–48, n. 2 (citing *McCraney v. State*, (1983) Ind., 447 N.E.2d 589; *Schmanski v. State*, (1979) 270 Ind. 331, 385 N.E.2d 1122). To the extent McKinley might have attempted to introduce evidence of his intended victim's violent propensities for the purpose of showing his reasonable fear of the victim in support of his self-defense claim, the dictum from the *McKinley* footnote was a correct statement of the law. This dictum was not correct, however, insofar as McKinely might have introduced such evidence for the purpose of showing his intended victim was the aggressor against him. *See infra* at 54.

sault and battery, where the defense is self-defense and it is asserted that the person charged to have been assaulted was the aggressor, the defendant may introduce evidence of his good reputation for peace and quiet, and of the bad reputation of his adversary for peace and quiet. This evidence goes to the jury to be weighed and considered with the other facts and circumstances in evidence for the purpose of determining who was the aggressor."

221 Ind. at 698, 51 N.E.2d at 369 (*quoted* in *Miller v. State*, (1960) 240 Ind. 398, 400, 166 N.E.2d 338, 339 (prosecution for homicide). When evidence of the victim's violent character is offered for the purpose of showing that the victim was the aggressor against the defendant in support of a claim of self-defense, there is no requirement of a foundational showing of the defendant's knowledge of the victim's character.[4] *See Buchanan v. State, supra;* Annot., 1 A.L.R.3d 571, 601 (1965).

With the distinctions in the *types of proof* evidencing character delineated by Professor McCormick in mind, *see supra* at 52, it appears that the Indiana cases that recognize the admissibility of character evidence on the issue of who was the aggressor in a battery or homicide case limit proof of character to reputation evidence.[5] The

**4.** Indiana cases are less clear, however, on the question of what foundational evidence the defendant must put in place before he may introduce evidence of the victim's violent character for this second purpose. The only indication of a foundational requirement in the *Niemeyer* opinion is the court's statement that evidence of the victim's reputation is admissible "where the defense is self-defense and it is asserted that the person charged to have been assaulted was the aggressor." In *Teague v. State*, (1978) 269 Ind. 102, 379 N.E.2d 418, however, our supreme court stated:

"As a general rule the character of the deceased is not an issue in the trial for homicide, and evidence to show his general reputation as a dangerous and violent man is inadmissible. An exception to the general rule is the existence of the issue of self-defense. *Madison v. State*, (1971) 256 Ind. 353, 269 N.E.2d 164; *Osburn v. State*, (1905) 164 Ind. 262, 73 N.E. 601. *Madison* went on to say, however, that there ought to be some other appreciable evidence of the deceased's aggression substantiating the self-defense issue before such testimony is relevant and admissible."

*Id.* at 115–16, 379 N.E.2d at 424 (cited in *Begley v. State*, (1981) Ind., 416 N.E.2d 824, 826).

Without positively defining the character or quantity of evidence necessary to constitute "appreciable evidence of ·the deceased's aggression substantiating the self-defense issue," *Begley, Teague,* and *Madison* all held the defendant failed to meet this threshhold requirement; thus, these cases only illustrate instances where the trial court properly refused to permit the defendant to introduce evidence of the victim's violent character. *See Begley,* 416 N.E.2d at 826 (self-defense issue not raised and evidence of victim's violent character properly excluded where there was no evidence victim was armed and defendant testified he carried a gun to scare victim, not to protect himself); *Teague,* 269 Ind. at 116, 379 N.E.2d at 116 (evidence of victim's

violent character properly excluded where, at time such evidence was offered, the only testimony was that the defendant shot victim in the back at considerable distance); *Madison,* 256 Ind. at 361, 269 N.E.2d at 168 (self-defense not an issue and evidence of victim's violent character properly excluded where victim was found · seated in his kitchen with food in his mouth, there was no sign of a struggle, and no weapon found other than murder weapon). Without attempting to define precisely the threshhold of "appreciable evidence of the [victim's] aggression substantiating the self-defense issue," we believe that where, as here, the defendant testified the victim lunged at him with a knife, and this testimony was corroborated by another witness, the issue of self-defense was properly raised, and the defendant was entitled to introduce evidence of the victim's violent character.

**5.** In *Niemeyer v. McCarty, supra,* our supreme court expressly authorized only evidence of a "reputation for peace and quiet" as admissible character evidence to aid the jury in determining whether the defendant or the victim was the aggressor. 221 Ind. at 698, 51 N.E.2d at 369. In *Miller v. State*, (1960) 240 Ind. 398, 166 N.E.2d 338, 339, our supreme court relied on *Niemeyer* in holding the trial court, in a homicide case where self-defense was pleaded, committed reversible error in sustaining the state's objection to testimony from two police officers concerning the victim's bad reputation for peace and quiet. *Id.* at 401, 166 N.E.2d at 339–40. And in *Sweazy v. State*, (1937) 210 Ind. 674, 1 N.E.2d 992, *on rehearing,* 5 N.E.2d 511, upon which *Niemeyer* relied, where a murder defendant claimed his victim had been the aggressor, our supreme court held that such a claim placed the character of the victim in issue, and, thus, the trial court did not err in admitting evidence of the victim's good reputation for peace and quietude. *Id.* at 685, 5 N.E.2d at 511. Thus, it appears that, where evidence of the character of

purpose of this limitation is that, where character evidence is offered in support of the somewhat doubtful inference that a person acted in conformity with his character on a particular occasion, the concern arises that the probative value of such character evidence may be outweighed by the dangers of prejudice, collateral issues, consumption of time and unfair surprise. See McCORMICK, *supra*, § 187 at 443–44. Reputation evidence strikes a balance by allowing character evidence on the issue of who was the aggressor without drawing the trial too deeply into the realm of the dangers described above. *See id.* § 186 at 443.

■ In the present case, defendant testified that as he approached Pearson the second time, near the car parked across the street from Big Mama's, Pearson lunged at him with a knife. This testimony was corroborated by the testimony of another defense witness. We deem this "appreciable evidence" of Pearson's aggression in substantiation of defendant's claim of self-defense, entitling defendant to present evidence of Pearson's violent character, without regard to defendant's knowledge of that character, for the purpose of showing Pearson probably was the initial aggressor. *See supra,* n. 4. Although Indiana authority, *supra* n. 5, and the dangers described by Professor McCormick, *supra,* counsel that defendant should have been limited to proof of Pearson's character by reputation evidence, the trial court, without objection from the prosecutor, permitted testimony from Betty Farris and Pearson himself of many specific acts of violence committed by Pearson, including his numerous battery convictions, as evidence of his violent character. Perhaps prompted by the concern that the trial might drift too far into collateral issues, however, the trial court excluded proffered testimony from Pearson and Duane Garrett concerning still other acts of violence. Thus, the excluded testimony was cumulative in nature, and the trial

the victim of a battery or homicide is relevant to the issue of whether the victim or the defendant was the aggressor, our supreme court prece-

court had broad discretion to exclude it. *Badelle v. State,* (1980) Ind., 434 N.E.2d 872, 877; *Pierce v. State,* (1970) 253 Ind. 650, 654, 256 N.E.2d 557, 559. Finding no abuse of this discretion, we hold the trial court did not err in excluding the further evidence of Pearson's violent acts.

Affirmed.

CONOVER and YOUNG, JJ., concur.

dents have expressly authorized only evidence of the victim's reputation as evidence of his character.