## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 21 2019, 6:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darius Montel Bushrod, *Appellant-Defendant,* | June 21, 2019 |
| | Court of Appeals Case No. 18A-CR-2769 |
| v. | Appeal from the Vanderburgh Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Michael J. Cox, Magistrate |
| | Trial Court Cause No. 82C01-1708-MR-5266 |

**Friedlander, Senior Judge.**

[1] Darius Bushrod appeals his conviction of murder, a felony,[1] and the jury's determination that he was eligible for a firearm sentencing enhancement.[2] He also appeals his seventy-five-year sentence. We affirm.

## Issues

[2] Bushrod raises four issues, which we consolidate and restate as:

1. Whether the trial court erred in the admission and exclusion of evidence.

2. Whether Bushrod's sentence is inappropriate in light of the nature of the offense and the character of the offender.

## Facts and Procedural History

[3] On Sunday, August 27, 2017, at 2:14 a.m., Sergeant Wayne Hunt of the Evansville Police Department was on patrol. He heard multiple gunshots and identified American Legion Post 354 ("the Post"), which was one block from his location, as the source of the shots.

[4] When he arrived at the Post, Sergeant Hunt saw several people running away from the building. Other people directed him to a man slumped on the ground

---

[1] Ind. Code § 35-42-1-1 (2017).

[2] Ind. Code § 35-50-2-11 (2016).

in the Post's parking lot. Sergeant Hunt requested an ambulance and additional officers to help him deal with the crowd outside the Post.

[5] Hunt determined the man was alive but unconscious. A security guard told Sergeant Hunt that the man had a handgun in his pocket. Sergeant Hunt retrieved the gun and secured it. Sergeant Hunt identified the unconscious man as Anthony Blaylock after finding an identification card on him.

[6] Emergency medical personnel and other officers arrived on the scene. They determined Blaylock had been shot. After Blaylock was taken away by ambulance, officers searched the scene and found several bullet casings. Several rounds had struck vehicles in the parking lot, and one round had gone through the Post's wall. Three people other than Blaylock had also been shot, but their wounds were minor.

[7] Detective Peter DeYoung attempted to interview members of the crowd. He spoke to ten to twelve people, but they were uncooperative.

[8] The Post's management had placed numerous security cameras outside the Post, and surveillance recordings were stored on a digital video recorder ("DVR") system with a date and time stamp. Sergeant Hunt and Detective DeYoung met with William VanHooks, Jr., the Post's commander, to review recordings of the shooting. The video, which is somewhat blurry, showed a person both officers recognized as Bushrod arguing with Blaylock. Bushrod walked out of the camera's field of view before returning to Blaylock, brandishing a handgun. Bushrod shot Blaylock several times and fled. A third

person produced a handgun and shot at Bushrod as he fled, inadvertently striking the other three victims and several vehicles. Blaylock never drew his own handgun.

[9] Blaylock died in an ambulance on the way to the hospital. A forensic pathologist performed an autopsy and determined Blaylock's cause of death was multiple gunshot wounds. One round had entered the base of his neck and traveled through the right side of his body before exiting. The examiner found soot on Blaylock's skin near the entrance wound for that round, which indicated the gun was less than six inches from Blaylock when Bushrod fired. A second round had entered Blaylock's upper back, passing through his left lung, the sac around the heart, and his liver before coming to rest in his torso. The injuries caused by that gunshot were "quickly fatal," and Blaylock "would have been beyond being saved after a few seconds to a minute." Tr. Vol. III, pp. 10, 13. The third round entered Blaylock's torso from left to right and passed through his stomach and right kidney before coming to rest in his torso.

[10] The officers submitted the collected ballistics evidence for analysis. A ballistics examiner determined none of the bullets that were fired on that night came from Blaylock's handgun.

[11] On August 30, 2017, the State charged Bushrod with murder and further claimed he was eligible for a sentence enhancement because he used a firearm in the course of committing the murder. The case was tried before a jury, and Bushrod presented a claim of self-defense. The jury determined Bushrod was

guilty of murder and, after a separate proceeding, further determined he was eligible for a firearm sentencing enhancement. The trial court imposed a sentence of sixty years for the murder conviction plus fifteen years for the sentencing enhancement. This appeal followed.

# Discussion and Decision

## I. Admission and Exclusion of Evidence

Bushrod claims the trial court committed several errors in the admission and exclusion of evidence. A trial court is vested with broad discretion in ruling on the admissibility of evidence. *Sudberry v. State*, 982 N.E.2d 475 (Ind. Ct. App. 2013). We review a court's evidentiary decisions for an abuse of discretion. *Griffith v. State*, 31 N.E.3d 965 (Ind. 2015). An abuse of discretion occurs when the decision "is clearly against the logic and effect of the facts and circumstances." *Dunn v. State*, 919 N.E.2d 609, 612 (Ind. Ct. App. 2010), *trans. denied*.

Bushrod first challenges the court's decision to admit into evidence the Post's surveillance video recordings and photographs derived from the video, claiming the State failed to establish an evidentiary foundation. When a party seeks to authenticate an item and have it accepted as evidence at trial, the party must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ind. Evid. Rule 901(a).

The Indiana Supreme Court has explained that the foundation required to authenticate a video recording or a photograph "depends on its use at trial."

*Knapp v. State*, 9 N.E.3d 1274, 1282 (Ind. 2014). If such evidence is intended to serve a demonstrative purpose, such as to illustrate testimony, then the proponent need only demonstrate through other testimony that the video or photo accurately depicts the scene or occurrence as it appeared at the time in question. *Id.* (quotation omitted).

[15] On the other hand, if the proponent seeks to have the video or photograph admitted as substantive evidence "'as to what activity is being depicted,'" there are different foundational requirements. *Id.* (quoting *Smith v. State*, 491 N.E.2d 193, 196 (Ind. 1986)). The proponent need not provide testimony stating that the video or photograph accurately represents the scene as it appeared. *Id.* Instead, the proponent should provide identifying testimony of the scene as it appears in the video or photograph to persuade the trial court of the video or photograph's "competency and authenticity to a relative certainty." *Id.* (quotation omitted).

[16] In *Knapp*, the State sought to admit into evidence crime-scene photos depicting a murder scene. A medical examiner testified he received three photographs from the photographer, who was a state police crime technician. The examiner further stated he verified when the photographs were taken based on the date and time data that was encoded within the image files by the camera. The Indiana Supreme Court determined that the examiner's testimony was sufficient to establish the photographs' competency and authenticity as substantive evidence. *Id.*

[17]     In the current case, VanHooks testified that he checked the Post's security cameras on a weekly basis. On the day of Blaylock's death, the surveillance cameras and the DVR system were functional. VanHooks further stated that he was the only person who had the password to look at live camera footage or to review footage stored on the DVR. In addition, he had the only key to the locked box in which the DVR was stored.

[18]     Detective Lincoln testified that he downloaded a copy of the recording from the DVR system to a USB drive in VanHooks' presence. VanHooks stated that neither he nor Detective Lincoln altered the recording. At that time, Detective Lincoln determined the time stamp on the recording was twenty-six minutes fast. He later copied the recording onto two DVDs, which he placed in the Evansville Police Department's property room. The State printed off photographs from the video recording without altering the recording. Based on the holding in *Knapp*, VanHooks' and Detective Lincoln's testimony was sufficient to establish the authenticity of the video recording and photographs as substantive evidence.

[19]     Next, Bushrod claims the trial court should not have admitted the video recording and photographs into evidence because they were "too blurry and unclear" for the jury to determine what was being shown. Appellant's Br. p. 14. He did not present this argument to the trial court, so it is waived for appellate review. *See Ferguson v. State*, 40 N.E.3d 954 (Ind. Ct. App. 2015) (defendant failed to object to trial court's failure to inform the jury a witness's

statement had been struck from the record, and the matter was waived on appeal), *trans. denied*.

[20] Bushrod attempts to avoid waiver by claiming that admission of the video recording and photographs was fundamental error. A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that fundamental error occurred. *Brown v. State*, 929 N.E.2d 204 (Ind. 2010). An error is fundamental if it either makes a fair trial impossible or blatantly violates basic and elementary principles of due process. *Id.* The fundamental error exception is available only in "'egregious circumstances.'" *Id.* at 207 (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

[21] A recording is admissible when, "taken as a whole, [it is] of such clarity that it does not lead the jury to speculate about its contents." *Hall v. State*, 897 N.E.2d 979, 981 (Ind. Ct. App. 2008). "Perfect clarity is not required." *Id.* Although the video recording and the photographs generated from the recording are blurry in places, they are sufficiently clear that the jury can determine what occurred. Further, during closing arguments both parties reviewed the recording with the jury and explained what the recording showed. We cannot conclude the video quality was so poor that admission of the video recording and photographs amounted to fundamental error.

[22] For his final claim of evidentiary error, Bushrod argues the trial court erred in excluding evidence that Blaylock was a serious violent felon ("SVF"). Bushrod

further argues the SVF evidence would have tended to show that Blaylock was the aggressor in their dispute, thus supporting his claim of self-defense.

[23] A valid claim of self-defense is legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837 (Ind. 2000). A defendant claiming self-defense must allege, among other elements, "a reasonable fear of death or great bodily harm." *Id.* at 840. As a result, when self-defense is at issue, any fact which reasonably would place a person in fear or apprehension of death or great bodily injury is admissible. *Russell v. State*, 577 N.E.2d 567 (Ind. 1991). "[T]he victim's reputed character, propensity for violence, prior threats and acts, *if known by the defendant*, may be relevant to the issue of whether a defendant had fear of the victim prior to utilizing deadly force against him." *Brand v. State*, 766 N.E.2d 772, 780 (Ind. Ct. App. 2002), *trans. denied* (emphasis added). Further, a defendant may not present evidence of the victim's reputed character for violence unless the defendant "first introduce[s] appreciable evidence of the victim's aggression to substantiate the claim of self-defense." *Id.*

[24] In *Brand*, a panel of this Court determined Brand should have been allowed to testify that he knew the victim sold drugs, was a member of a gang, and had offered to sell him a handgun. The Court ruled that such evidence was relevant to establish the reasonableness of Brand's fear of the victim. Similarly, in *Russell*, the Indiana Supreme Court determined that Russell should have been allowed to testify that the victim had told him he had just been released from prison. By contrast, in Bushrod's case, there was no evidence that he knew that Blaylock was a SVF. As a result, Blaylock's SVF status was irrelevant to the

issue of whether Bushrod had a reasonable fear of him.[3]  Further, in this case Bushrod did not first provide evidence of Blaylock's aggression sufficient to substantiate the claim of self-defense.  Blaylock never drew his firearm, and we do not know what he and Bushrod said to each other.

[25]  Bushrod cites *Chapman v. State*, 469 N.E.2d 50 (Ind. Ct. App. 1984), in support of his claim that Blaylock's SVF status should have been admitted into evidence regardless of whether Bushrod was aware of it when he killed Blaylock.  In *Chapman*, a panel of this Court determined, "When evidence of the victim's violent character is offered for the purpose of showing that the victim was the aggressor against the defendant in support of a claim of self-defense, there is no requirement of a foundational showing of the defendant's knowledge of the victim's character." *Id.* at 54.  The Court cautioned that only reputational evidence may be offered for the purpose of showing the victim was the aggressor, because other forms of evidence may run the risk of being unfairly prejudicial, among other concerns.  In Bushrod's case, there is no evidence that Blaylock's SVF status was public knowledge or part of his reputation in the community.  In the absence of reputational evidence, the holding in *Chapman* does not require the admission of Blaylock's SVF status into evidence, and Bushrod has failed to demonstrate the trial court abused its discretion.

---

[3] On a related issue, Bushrod argues the trial court erred in excluding evidence that Blaylock's handgun had been used in an unsolved shooting.  There is no evidence Bushrod was aware that Blaylock had a handgun, much less that it had been used in a shooting.  The handgun's history was thus irrelevant to whether Bushrod had a reasonable fear of Blaylock.

# II. Appropriateness of Sentence

[26] Bushrod argues his seventy-five-year sentence is inappropriately high and asks the Court to reduce it to forty-five years, the minimum possible sentence. Article seven, section six of the Indiana Constitution authorizes this Court to "review and revis[e]" sentences. This constitutional authority is implemented through Indiana Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[27] The principal role of appellate review under rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived correct result in each case. *Threatt v. State*, 105 N.E.3d 199 (Ind. Ct. App. 2018), *trans. denied*. As a result, the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265 (Ind. Ct. App. 2008). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Bushrod has the burden of proving his sentence is inappropriate. *Howell v. State*, 97 N.E.3d 253 (Ind. Ct. App. 2018), *trans. denied*.

[28] At the time Bushrod committed his offense, the maximum sentence for murder was sixty-five years, the minimum sentence was forty-five years, and the

advisory sentence was fifty-five years.  Ind. Code § 35-50-2-3 (2015).  In addition, if a defendant such as Bushrod was found to have used a firearm in the commission of a felony, the court could sentence the defendant to an additional fixed term of between five and twenty years.  Ind. Code § 35-50-2-11.  The trial court sentenced Bushrod to sixty years for murder, plus fifteen years for the firearm sentencing enhancement.  His seventy-five-year sentence is lengthy but falls short of the maximum possible sentence of eighty-five years.

[29]  "The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation."  *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017).  Bushrod argues the nature of the offense is tragic but not "heinous" because Blaylock died quickly and apparently did not suffer extensively.  Appellee's Br. p. 29.  We disagree.  After arguing with Blaylock, Bushrod walked away and returned, thus escalating the dispute.  He could have refrained from lethal violence but chose to proceed.  In addition, Blaylock appeared to be unarmed, and there is no evidence Bushrod knew Blaylock had a handgun in his pocket.  Bushrod nonetheless shot Blaylock three times, including once in the back.  Finally, Bushrod's violent act endangered not only Blaylock but numerous people inside and outside of the Post.  These troubling circumstances outweigh Blaylock's relatively quick death.

[30]  Turning to the character of the offender, Bushrod was almost twenty-one when he killed Blaylock, but he had already developed a lengthy criminal record.  As a juvenile, he was adjudicated a delinquent for acts that, if committed by an adult, would have constituted robbery, a Class B felony; battery resulting in

bodily injury, a class A misdemeanor; conversion, a Class B misdemeanor; theft, a Class D felony; two counts of resisting law enforcement, both Class A misdemeanors; and disorderly conduct, a Class A misdemeanor. The juvenile courts imposed lesser but escalating sanctions on Bushrod, including a suspended commitment to the Indiana Department of Correction ("IDOC") and serving a weekend in secure detention. These lesser sanctions did not deter Bushrod from further misbehavior, and he was subsequently placed with the DOC on two occasions. In addition, in one case Bushrod was waived to adult court, where he pleaded guilty to theft, a Class D felony.

[31] After Bushrod became an adult, he was convicted of escape, a Class D felony, and operating a motor vehicle without obtaining a license, a Class C misdemeanor. Over the course of his life, he has accrued new delinquency determinations and criminal convictions every few years. In an attempt to minimize his lengthy and consistent record of misconduct, Bushrod argues his current murder conviction is "only Bushrod's third felony" as an adult. Appellee's Br. p. 26. We view his history differently, concluding that a twenty-one-year old with three felony convictions, one of them for murder, has demonstrated an absolute unwillingness to comply with the law despite being provided with numerous opportunities to reform his behavior.

[32] Bushrod claims his relative youth renders his sentence inappropriate. A defendant's youthful age can, in some cases, constitute a significant mitigating circumstance warranting a reduced sentence, but that is not automatically the case. *Coleman v. State*, 952 N.E.2d 377 (Ind. Ct. App. 2011). As this Court has

noted, "twenty-one is not especially young." *Id.* at 385. Under the facts of this case, we cannot conclude his age warrants a reduced sentence. Bushrod has failed to demonstrate that his sentence is inappropriate.

# Conclusion

[33] For the reasons stated above, we affirm the judgment of the trial court.

[34] Judgment affirmed.

Kirsch, J., and Crone, J., concur.