STATE OF NEBRASKA, APPELLEE, V. WALTER L. SIMS, APPELLANT.

331 N.W.2d 255

Filed March 11, 1983. No. 82-397.

M. Robert Fromkin and David L. Herzog, P.C., for appellant.

Paul L. Douglas, Attorney General, and Frank J. Hutfless, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and WARREN, D.J.

CAPORALE, J.

Defendant-appellant, Walter L. Sims, was charged with second degree murder; the intentional but unpremeditated killing of Gregory S. Combs. A jury found defendant guilty of the lesser-included offense of manslaughter, the unintentional killing of Combs. The trial court adjudged the defendant guilty pursuant to the jury's verdict and imposed a prison sentence of from 5 to 10 years. We affirm.

Defendant assigns three errors, namely, that the trial court erred in (1) admitting into evidence an allegedly gruesome and prejudicial photograph which had no probative value as to any controverted fact, (2) excluding proof probative of the fact that the decedent was the first aggressor and of decedent's violent and dangerous nature, and (3) abusing its discretion by denying probation and imposing an excessive period of imprisonment.

The defendant, a 44-year-old Omahan, planned and promoted an amateur fashion show in the summer of 1981, which was held on September 3, 1981, at his lounge known as "Walt's Bar." The participants included, among others, one Conchita Johnson and the deceased Combs. During rehearsals on September 1, 1981, Combs and Johnson were involved in an altercation wherein Combs struck and injured Johnson. As a consequence, defendant notified both that they would not be allowed to participate in the show. This was at least in part because the defendant thought it was disrespectful of Johnson to have called the police to his establishment. However, both Johnson and Combs did participate in the show and also came to the party held after the show's conclusion for the participants and others. The party was held at the apartment above defendant's other lounge, the State Bar, at which one Clarence Vaughn resided.

Johnson testified that prior to arriving at the party, Combs had assaulted her outside a downtown Omaha restaurant but denied he had a gun; however, an eyewitness gave testimony that Combs did have a gun. At the party Johnson and Combs once again became involved in an argument. First Vaughn, and then defendant and others, approached Combs and sought to eject him from the premises. Several parties became aware of the fact during this time that Combs had a gun in the waistband of his pants. Vaughn, Alfred McGee, and Gail Hepburn, as well as the defendant, testified that Combs threatened to kill defendant. Johnson testified it was defendant who threatened to kill Combs. Anthony Tate heard defendant say to decedent, "But you don't pull no pistol on me." According to Tate, upon making that statement, defendant pulled a gun and shot the decedent. On the other hand, an off-duty policeman who was a guest at the party, Isaiah Jackson, Jr., testified that Combs broke away while being led out. Jackson thereupon attempted to take

the gun from Combs but was unsuccessful. McGee testified that Jackson then yelled out, "He's got a gun." After Jackson's warning and during the scuffle which ensued, a shot rang out, which struck Combs. The defendant then left the premises, but within a few hours voluntarily accompanied Jackson to police headquarters. Police Sergeant Cousin testified that after initially denying involvement, defendant verbally admitted to him the shooting of Combs, but in self-defense. At trial, however, he testified that he did not pull the trigger and that his gun went off accidentally.

We now turn our attention to defendant's first assignment of error. The color photograph in question is 8 inches by 10 inches in size and exhibits the upper part of decedent's body, with eyes closed, draped in white sheets. Some bloodstains are visible, as is a medical cut above the decedent's heart made in an effort to revive him; the photograph also shows two tubes in the body's mouth. Defendant argues that inasmuch as it was stipulated that he, defendant, had shot the decedent and caused the death, the photograph had no probative value as to any controverted fact. We agree with the defendant that the receipt into evidence of an item for "whatever it's worth" does not render worthless evidence probative and therefore properly admissible. Although we recently cautioned against the overuse of gruesome photographs in *State v. Jones, ante* p. 1, 328 N.W.2d 166 (1982), we restated that in a homicide case photographs of the victim, upon proper foundation, may be received in evidence for the purpose of identification, to show the condition of the body, to show the nature and extent of the wounds and injuries, and to establish malice or intent. A photograph which illustrates or makes clear some controverted issue in a homicide case may be received even if it is gruesome. The admission into evidence of a gruesome photograph rests in the sound discretion of the trial court, which must determine its

relevancy and weigh its probative value against its possible prejudicial effect. The photograph in question, given the nature of photographs of crime victims, is not gruesome. Moreover, this was the only photograph of the decedent admitted into evidence and was used by the pathologist in describing where the bullet had struck, the chest; this fact is relevant to the issue of whether the shot was fired in self-defense. The trial court did not abuse its discretion by admitting the photograph into evidence.

Defendant next complains because the trial court did not permit Johnson to testify that she did not pursue the September 1, 1981, assault upon her by the decedent with the police because she feared he would have beaten her "like a dog," as he had beaten Kathy Binns. It is defendant's position that such testimony should have been admitted to support his claim that the decedent was violent and combative and had been the first aggressor, under the provision of Neb. Rev. Stat. § 27-405 (Reissue 1979), which reads: "(1) In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

"(2) In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." Cases decided by this court prior to the adoption of the foregoing statute in 1975 hold that, where relevant, evidence of a homicide victim's propensity for violence ordinarily is admissible only in the form of reputation testimony. See, *State v. Ralls,* 192 Neb. 621, 223 N.W.2d 432 (1974); *State v. Kimbrough,* 173 Neb. 873, 115 N.W.2d 422 (1962). We conclude, however, that the language of § 27-405(2) changes that rule when character is an essential element of a "charge, claim, or defense." See, *United States v. Powers,*

622 F.2d 317 (8th Cir. 1980), *cert. denied* 449 U.S. 837, 101 S. Ct. 112, 66 L. Ed. 2d 44; *United States v. Giese,* 597 F.2d 1170 (9th Cir. 1979), *cert. denied* 444 U.S. 979, 100 S. Ct. 480, 62 L. Ed. 2d 405; and *United States v. Pantone,* 609 F.2d 675 (3d Cir. 1979), interpreting Fed. R. Evid. 405, identical in language to § 27-405, to permit evidence of specific instances of conduct where character is an essential element of a defense. Sims defended on the basis he shot in self-defense; that is, his actions were justified because he used only such force as he believed necessary to protect himself pursuant to the provisions of Neb. Rev. Stat. § 28-1409 (Reissue 1979). In order to excuse or justify a killing in self-defense, the accused must have entertained a reasonable and good faith belief his life was in great danger or that he was in danger of suffering great bodily harm. Thus, the proffered Johnson testimony was relevant to, and probative of, the question as to whether decedent was the first aggressor. The trial court therefore erred in not admitting that testimony. That finding does not, however, resolve the issue. For when error has occurred, a determination must always be made as to whether the error was prejudicial. See, Neb. Rev. Stat. § 27-103 (Reissue 1979), stating that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected, and Neb. Rev. Stat. § 29-2308 (Reissue 1979), providing that no judgment in a criminal case shall be set aside or new trial granted because of the rejection of evidence, unless a substantial miscarriage of justice has actually occurred. These statutory rules find expression in cases such as *State v. Andersen, ante* p. 695, 331 N.W.2d 507 (1983), and *State v. Van Ackeren,* 194 Neb. 650, 235 N.W.2d 210 (1975).

The proffered testimony was cumulative. There was ample evidence before the jury to establish, if it chose to so find, that the decedent was violent and aggressive and that he was indeed the first aggres-

sor. In view of the cumulative nature of the excluded evidence, we conclude the error was harmless beyond a reasonable doubt. See, *Milton v. Wainwright,* 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972); *Schneble v. Florida,* 405 U.S. 427, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972); *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), *rehearing denied* 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241; *United States v. Ledesma,* 632 F.2d 670 (7th Cir. 1980), *cert. denied* 449 U.S. 998, 101 S. Ct. 539, 66 L. Ed. 2d 296.

This then brings us to defendant's third and final assignment of error. Manslaughter is a Class III felony, for the conviction of which one may be sentenced to from 1 to 20 years' imprisonment, assessed a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1979). Although it is true that defendant has a relatively clean past record, the presentence report considered by the trial court reveals that defendant was convicted of petit larceny in 1959 and was convicted for sale of liquor without a license in 1969. In 1966 he was charged with carrying a concealed weapon; although no disposition is shown pertaining to that instance, the record does indicate defendant forfeited his bond.

Albeit unintentionally, defendant nonetheless destroyed another human life. Neb. Rev. Stat. § 29-2260 (Reissue 1979) provides that whenever a court considers a sentence for an offender convicted of a felony, the court may withhold a sentence of imprisonment unless, among other things, a lesser sentence will depreciate the seriousness of the crime or promote disrespect for the law. No one can argue but that the taking of life is a serious offense; to treat it lightly would both depreciate the seriousness of the crime and promote disrespect for the law. In any event, as we have said many times in the past, a sentence imposed by the trial court within the statutory limits will not be disturbed on appeal unless there has been an abuse of discretion.

*State v. Komor, ante* p. 376, 329 N.W.2d 120 (1983); *State v. Schmidt, ante* p. 126, 327 N.W.2d 624 (1982); *State v. Glover,* 207 Neb. 487, 299 N.W.2d 445 (1980). No abuse of discretion appears here.

The judgment and sentence of the trial court are affirmed.

AFFIRMED.