State of Nebraska, Appellee, v. Dennis L. Lewchuk,
APPELLANT.

539 N.W.2d 847

Filed November 21, 1995.   No. A-94-1234.

David A. Domina and Denise E. Frost, of Domina &
Copple, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for
appellee.

Hannon, Irwin, and Miller-Lerman, Judges.

Irwin, Judge.

## I. INTRODUCTION

Appellant in this case was charged with assault in the first
degree. Appellant was tried twice, the first trial resulting in a

hung jury and the second in a conviction. Appellant failed to appear at sentencing and was arrested 14 years after the conclusion of the second trial and sentenced to a term of imprisonment. Appellant seeks to have his conviction set aside because the district court in his second trial refused to admit testimony relating to specific instances of the victim's violent conduct. Because we find the district court committed reversible error, we reverse, and remand for a new trial.

## II. FACTUAL BACKGROUND

The events which gave rise to this case occurred during the nighttime hours of December 21, 1979, and early morning of December 22. Viewed in the light most favorable to the State, the record reveals the following facts:

On the evening of December 21, 1979, appellant, Dennis L. Lewchuk, accompanied a friend to various bars and lounges in the Norfolk, Nebraska, area. Lewchuk eventually arrived at the Brass Rail bar in Norfolk at approximately midnight. While at the Brass Rail, Lewchuk encountered a man named James Warner, the victim in this case.

Although there is some conflict as to the specific details of Lewchuk's encounter with Warner, it appears that Warner was aware Lewchuk had some affiliation with the Joker's Wild, a motorcycle gang, and Warner had been making obnoxious and insulting remarks about Joker's Wild members and questioning how "tough" they really were. At some point, Lewchuk and Warner proceeded to get into an automobile which Lewchuk drove away from the Brass Rail. According to Lewchuk, the two were going to Lewchuk's home to see his bar. Warner claimed to have gotten into the car with Lewchuk to go somewhere and smoke marijuana. The accounts of the events after Lewchuk and Warner left the Brass Rail in the automobile differ substantially.

Lewchuk alleged that Warner again began to make disparaging remarks about the Joker's Wild members and questioned how tough they were. Lewchuk claimed that Warner touted his skills in karate and at some point threatened to "do [Lewchuk] in right where [he] sat." Lewchuk alleged that Warner suddenly hit him with a karate chop to the throat, pulled him to the floor of the car, and began choking him until he

nearly blacked out. Lewchuk claimed to then have obtained a knife from a sheath on Lewchuk's belt and stabbed Warner in self-defense until Warner released him and fled from the car.

Warner alleged that he was merely sitting in the car listening to Lewchuk talk about how people were afraid of the Joker's Wild members for various things they had done to other people. Warner claimed that Lewchuk, without warning, struck him in his left arm. Warner alleged that he attempted to grab Lewchuk's arm, missed, and was struck in the head by Lewchuk and began bleeding. When he began bleeding, Warner claimed, he realized that Lewchuk was using more than his fists and that he had actually been stabbed. Warner claimed to have attempted to get out of the car, continually feeling blows coming from over his right shoulder. Warner testified that he remembered Lewchuk shouting, " 'Why don't you die, you son-of-a-bitch.' " Eventually the car ran off the road, and Warner alleged that he was able to make his escape, seek refuge, and contact the police.

As a result of the incident, Warner suffered numerous lacerations, some of which were very large and very deep. Among the wounds were at least two chest wounds. The doctor who examined Warner testified at trial that there may have been as many as 25 knife wounds, which required approximately 500 stitches.

After the incident, Lewchuk proceeded to go home. A couple of days later, after learning that a warrant had been issued for his arrest, Lewchuk turned himself in to the Norfolk Police Department.

The case proceeded to trial the first time in June 1980. The first trial ended with a hung jury on June 21. During the course of the first trial, the court allowed Lewchuk to call several witnesses to testify about alleged specific instances of Warner's violent conduct on the night of December 21, 1979.

Mark Volquardson testified that he was a bartender at the Brass Rail on December 21, 1979, and that Warner had forcefully shoved a female patron into him. Volquardson testified that on that night Warner was being very loud and belligerent and was "raising hell" in the bar. Volquardson also testified that he observed Warner hit another patron in the chest.

Gary Biggerstaff testified that he was in the Brass Rail on the night of December 21, 1979, and that Warner repeatedly made obscene comments to him, bragged about his proficiency in karate, and attempted to gouge Biggerstaff's eyes out. Biggerstaff further testified that he went outside of the bar with Warner, and Warner beat him. Biggerstaff also testified to Warner's reputation for using force, knives, and guns on other people.

B.J. Hoile testified that he was in the Brass Rail on the night of December 21, 1979, and had an altercation with Warner. Hoile testified that Warner directed obscene comments at him and then asked him to step out behind the bar. Hoile testified that he went out behind the bar with Warner, Warner swung at him and missed, and as Hoile attempted to return to the bar, Warner grabbed him from behind and tried to gouge his eyes out. Hoile testified that Warner was generally very vulgar and obnoxious on that night, and Hoile observed Warner shove the female patron.

Janell Hackler testified that she was in the Brass Rail on the night of December 21, 1979. Hackler testified that she was the female patron Warner shoved in the bar that night. Hackler testified that the shove was forceful enough to move her a couple of steps, but not enough to push her to the ground.

Leonard Haines testified that he was in the Brass Rail on the night of December 21, 1979, and observed Warner shove Hackler. Haines testified that Warner was acting in a very vulgar, drunken, disrespectful manner throughout the evening.

Richard Bear testified that he was in the Brass Rail on the night of December 21, 1979, and that Warner made disparaging remarks about the Joker's Wild to Lewchuk and tried to start a fight with Bear while they were in the bar.

Lewchuk was tried a second time on September 23 through 30, 1980. On September 11, the State filed a motion in limine seeking to prevent the defense from presenting any evidence of specific instances of violent, aggressive, or assaultive conduct by Warner toward third persons, unless Lewchuk was aware of Warner's conduct prior to the charged assault. After a hearing on September 12, the court sustained the motion. On September 26, Lewchuk's counsel made an offer of proof concerning the

substance of the excluded testimony by offering a transcript of the witnesses' testimony about specific acts of violence by Warner from the first trial. The parties stipulated to the form, foundation, and accuracy of content of the offer of proof. The State noted on the record its objection to the jury hearing the testimony in the offer of proof, and the court sustained the objection. On September 30, the jury returned a verdict of guilty against Lewchuk.

On November 6, 1980, Lewchuk failed to appear for sentencing, and his bond was forfeited. During the time period from November 1980 to December 1994, Lewchuk lived primarily in Alabama under an assumed name. After he was identified and arrested by the FBI in Alabama, Lewchuk was returned to Nebraska in 1994. Lewchuk was sentenced on December 16, 1994. Lewchuk then filed his appeal to this court, challenging his conviction.

### III. ASSIGNMENTS OF ERROR

In this appeal, Lewchuk assigns numerous errors from the proceedings in the district court. One of the assigned errors is that the district court erred in excluding testimony about specific instances of violent and aggressive conduct by the victim in the hours preceding the assault with which Lewchuk was charged. Because our decision regarding this error is dispositive, we will not address the remaining assigned errors. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994). We also note that Lewchuk has not assigned as error that there was insufficient evidence to support his conviction. See *State v. Noll*, 3 Neb. App. 410, 527 N.W.2d 644 (1995).

### IV. STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, the admissibility or exclusion of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994); *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

Error may not be predicated upon a trial court's ruling

excluding testimony of a witness unless the substance of the evidence to be offered by the witness' testimony was made known to the court by offer or was apparent from the context in which the questions were asked. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991); *State v. Bennett*, 2 Neb. App. 188, 508 N.W.2d 294 (1993).

Since under the Nebraska rules of evidence all relevant evidence is admissible except as otherwise provided in the Nebraska rules of evidence, a proponent of evidence which was excluded at trial is not limited on appellate review to reliance upon the bases argued for admission of the evidence at trial. *Cockrell v. Garton*, 244 Neb. 359, 507 N.W.2d 38 (1993).

In a jury trial of a criminal case, whether an error in excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Toney*, 243 Neb. 237, 498 N.W.2d 544 (1993).

## V. ANALYSIS

### 1. Admissibility of Evidence of Victim's Character

At trial, Lewchuk sought to introduce testimony of Mark Volquardson, Gary Biggerstaff, B.J. Hoile, Janell Hackler, Leonard Haines, and Richard Bear about the specific instances of Warner's violent and assaultive conduct these witnesses observed on the night in question. The district court granted the State's motion in limine, preventing any testimony as to specific instances of conduct, and limited the testimony to reputation and opinion testimony about the victim's violent character. The court ruled that specific acts could be introduced only if Lewchuk was shown to have had knowledge of them prior to the charged assault. In this appeal, Lewchuk contends that testimony about the specific acts supports his defense claim that Warner was the first aggressor, and therefore Lewchuk was justified in using the force he did to defend himself. See Neb. Rev. Stat. § 28-1409 (Reissue 1989). The same statutory provision for the use of force in self-defense was in effect at the time of Lewchuk's trial.

■ We note that it is not entirely clear from the record that Lewchuk offered the evidence at trial in the precise manner in which we are analyzing its admissibility. Our analysis cannot be limited to the bases argued at trial, and we must determine if the evidence should have been admitted for any purpose. See *Cockrell, supra.* We also note that Lewchuk properly made the substance of the evidence to be offered by the witnesses' testimony known to the court by an offer of proof. See *Cortis, supra.*

■ Evidence of a victim's violent character is probative of the victim's violent propensities, and many courts have recognized that evidence of a victim's violent character is relevant to the proof of a self-defense claim. See, e.g., *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983) (where court found that specific examples of victim's violent conduct were relevant to who was first aggressor in homicide case); *State v. Dunson*, 433 N.W.2d 676 (Iowa 1988) (holding that evidence of specific acts of violence by victim, even if subsequent to assault charged, is admissible and relevant to victim's aggressive character and propensity for violence). See, also, *United States v. Burks*, 470 F.2d 432 (D.C. Cir. 1972) (holding that in homicide case, evidence of deceased's violent character, including evidence of specific violent acts, is relevant on issue of who was first aggressor); *Gonzales v. State*, 838 S.W.2d 848 (Tex. Crim. App. 1992) (holding that evidence of victim's aggressive character is essential element of self-defense); *Chapman v. State*, 469 N.E.2d 50 (Ind. App. 1984) (noting that evidence of person's character, however adduced, is admissible in homicide and battery cases where defendant raises issue of self-defense); *People v. Buchanan*, 91 Ill. App. 3d 13, 414 N.E.2d 262 (1980) (noting that a common issue in self-defense cases is use of evidence regarding reputation or character of deceased); Annot., 1 A.L.R.3d 571 (1965). Evidence of a victim's violent character—his propensity to engage in violent and aggressive conduct—can be offered by a defendant under Neb. Evid. R. 404(1)(b), Neb. Rev. Stat. § 27-404(1)(b) (Cum. Supp. 1994).

Rule 404 discusses the use of evidence of a person's character or trait of character. Rule 404(1) discusses the limited

circumstances in which evidence of a trait of a person's character may be used as evidence that he or she acted in conformity with such trait on another occasion. Rule 404(2) discusses the circumstances in which evidence of a trait of a person's character may be used as evidence of some other issue aside from demonstrating that he or she acted in conformity with such trait on another occasion, namely, to demonstrate motive, opportunity, intent, preparation, plan, et cetera. Although rule 404(1) and (2) both deal with character evidence, we are here concerned with rule 404(1).

Rule 404 provides:

> (1) Evidence of a person's character or a trait of his . . . character is not admissible for the purpose of proving that he . . . acted in conformity therewith on a particular occasion, *except*:
>
> . . . .
>
> (b) *Evidence of a pertinent trait of character of the victim of the crime offered by an accused* or by the prosecution to rebut the same . . . .

(Emphasis supplied.) This language was also in effect at the time of Lewchuk's trial. The plain language of rule 404 provides that Lewchuk may present evidence of a pertinent trait of Warner's character, such as his propensity for violence, to show that Warner acted in conformity therewith on the night in question.

Our analysis of the character evidence in this case is confined to rule 404(1). Our review of other jurisdictions which have found character evidence relevant to a self–defense claim, as well as the Nebraska Supreme Court's analysis in *Sims, supra*, has revealed that rule 404(1) and Neb. Evid. R. 405(2), Neb. Rev. Stat. § 27–405 (Reissue 1989), provide appropriate bases for admitting the character evidence in this case. Our analysis under rule 404(1) is not meant to foreclose or in any way imply a limitation on the possibility of this type of evidence in another case being offered pursuant to rule 404(2) to demonstrate something *other* than conformity. See, e.g., Annot., 121 A.L.R. 380 (1939) (noting that in homicide cases where self–defense was relied upon, courts have held admissible specific prior acts of deceased as being part of res gestae or, where sufficiently

close in time and circumstances, to characterize deceased's conduct or state of mind at time and to establish deceased as initial aggressor, even where prior actions were not within defendant's knowledge).

## 2. Determining What Type of Character Evidence May Be Used

When it is determined that evidence of a trait of the victim's character is admissible, rule 405 governs what type of evidence can be used. There are three distinct types of character evidence provided for in rule 405: reputation testimony, opinion testimony, and testimony of specific instances of conduct. Rule 405 provides:

> (1) In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross–examination, inquiry is allowable into relevant specific instances of conduct.
>
> (2) In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

The same language was in effect at the time of Lewchuk's trial.

### (a) Reputation and Opinion Testimony

Rule 405(1) provides that in situations where testimony is allowed about a person's character trait, such as Warner's propensity for violence, that trait may be shown by reputation and opinion testimony. At trial, the district court allowed witnesses to testify about Warner's reputation or their opinion about Warner's violent character. This was appropriate.

### (b) Specific Instances of Conduct

Rule 405(2) provides for proof of specific instances of conduct regarding a person's character or trait of character when the character or trait of character is an essential element of a charge, claim, or defense. Lewchuk asserted self–defense as his defense at trial, alleging that Warner was the first aggressor in the incident.

A determination of whether Warner was the first

aggressor is an essential element of Lewchuk's self–defense claim. See *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983). In *Sims*, the Nebraska Supreme Court noted that testimony about specific incidents of the victim's violent behavior was relevant to, and probative of, the question of who was the first aggressor. The court in *Sims* held that the district court committed error by refusing to admit testimony of specific prior acts of violence by the victim under rule 405(2). However, the court in *Sims* found the excluded evidence to be merely cumulative and held the error harmless. Although we recognize that *Sims* was decided after Lewchuk's trial, the evidence rules upon which the *Sims* decision was premised were the same as those in effect at the time of Lewchuk's trial.

### 3. RELEVANCE OF DEFENDANT'S KNOWLEDGE OF PRIOR ACTS

The trial court herein stated that evidence of specific prior incidents of Warner's violent conduct would have been admissible only if it was first demonstrated that Lewchuk was aware of the incidents. It appears that the district court was operating under a common misconception about the use of character evidence in support of a self–defense claim. Many courts, when discussing the admissibility of testimony concerning the victim's violent and aggressive character, fail to distinguish two different and independent purposes for which the testimony may be offered. See Annot., 1 A.L.R.3d 571 (1965), and cases cited therein. One purpose for the testimony may be to demonstrate that the defendant was in a reasonable state of mind in acting in self–defense and had a reasonable fear based upon the victim's violent and aggressive character, which was known by the defendant. The other purpose for the testimony may be to support the defendant's allegation that the victim was the first aggressor. A demonstration of the victim's violent character makes it more probable that the victim initiated the violence in this instance and was in fact the first aggressor. See, e.g., *United States v. Burks*, 470 F.2d 432 (D.C. Cir. 1972); *Gonzales v. State*, 838 S.W.2d 848 (Tex. Crim. App. 1992); *Chapman v. State*, 469 N.E.2d 50 (Ind. App. 1984); *People v. Buchanan*, 91 Ill. App. 3d 13, 414 N.E.2d 262 (1980); Annot., 1 A.L.R.3d, *supra*.

These two distinct purposes serve different functions and carry different requirements as to the defendant's knowledge of the victim's character. See *Buchanan, supra*, citing 1 John H. Wigmore, Evidence in Trials at Common Law § 63 (3d ed. 1940). When the character evidence is being offered for the first purpose, to determine if the defendant's fear was reasonable, it is being used subjectively to determine the defendant's state of mind and his beliefs regarding the danger he was in. See *Buchanan, supra*. When the character evidence is being used for the first purpose, the defendant necessarily must have known of the incidents or reputation which makes up the character testimony at the time of the assault. See *id.* (noting that when character evidence is used to show defendant's state of mind, defendant must have known of information concerning victim when act of self-defense occurred).

When the character evidence is being offered for the second purpose, to establish which party was the first aggressor, it is being used objectively to determine if the victim was more probably than not the first aggressor in the incident in question. See *Buchanan, supra*. When the character evidence is being used for the second purpose, the defendant's knowledge of the incidents or reputation which makes up the character testimony is irrelevant. See, e.g., *Burks, supra* (noting that defendant's knowledge of victim's violent character, including evidence of specific acts of violence, is irrelevant when the evidence is used to show who first aggressor was); *Gonzales, supra* (stating defendant need not show awareness of specific acts of violence by victim when such evidence is used to show who in fact was first aggressor); *Chapman, supra* (holding defendant's knowledge of victim's reputation for violence is irrelevant where victim's character offered to show who was first aggressor); *Buchanan, supra* (holding specific acts of violence by victim are admissible to support self-defense claim even if defendant did not know of acts at time of charged assault); Annot., 1 A.L.R.3d, *supra*. Evidence that Warner was a violent person or committed violent acts helps to corroborate Lewchuk's allegation that Warner was the first aggressor, even if Lewchuk was unaware of the previous violent acts at the time of the assault in question.

We conclude pursuant to rules 404(1)(b) and 405(2) that Lewchuk was entitled to present evidence of Warner's violent and aggressive character to support his claim of self–defense. See *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983). Pursuant to rule 405(2), Lewchuk was entitled to present evidence of specific instances of conduct demonstrating Warner's violent, aggressive character to corroborate Lewchuk's claim that Warner was the first aggressor. See *Sims, supra*. It is irrelevant whether Lewchuk was aware of the prior incidents at the time of the assault, and the trial court committed error by refusing to admit the evidence because Lewchuk had not established his knowledge of the prior incidents.

### 4. Prejudicial Nature of Error

Determining that the district court erred by excluding evidence of specific instances of Warner's violent conduct does not end our inquiry. When error has occurred, we must always determine if the error was prejudicial. See Neb. Evid. R. 103, Neb. Rev. Stat. § 27–103 (Reissue 1989), stating that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected, and Neb. Rev. Stat. § 29–2308 (Cum. Supp. 1994), providing that no judgment in a criminal case shall be set aside or new trial granted because of the rejection of evidence, unless a substantial miscarriage of justice has actually occurred. See, also, *Sims, supra*. Although rule 405(2) allows the proffered testimony in this case to be admissible, the admissibility of such evidence is always subject to the constraints of Neb. Evid. R. 403, Neb. Rev. Stat. § 27–403 (Reissue 1989).

Rule 403 provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by dangers of unfair prejudice, confusion of issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The concept of probative value involves an assessment of the tendency of evidence to establish that the proposition for which it is offered is more probably than not as a party claims it to be. *State v. Lowe*, 244 Neb. 173, 505 N.W.2d 662 (1993). Probative value is measured by the degree to which the evidence persuades the

fact finder that a particular fact exists and the distance of the particular fact from the ultimate issues of the case. *State v. Williams*, 247 Neb. 878, 530 N.W.2d 904 (1995); *Lowe, supra*.

We cannot say that the testimony excluded in this case is substantially more prejudicial than it is probative. The proffered testimony concerned accounts of Warner acting violently and aggressively assaulting numerous individuals in the few hours preceding his encounter with Lewchuk. The testimony concerned eyewitness accounts of Warner physically attacking numerous other individuals and acting in a manner consistent with Lewchuk's claim that Warner was the first aggressor. The similarity in circumstances and the proximity in time of the prior incidents would be highly probative of the issue of whether Warner was the first aggressor and physically attacked Lewchuk on the night in question.

We also cannot say that the testimony excluded in this case is merely cumulative. The district court did allow testimony as to Warner's reputation for violence and witnesses' opinions as to his violent character. The excluded testimony of specific acts by which Lewchuk would have demonstrated Warner's violent and aggressive propensities would have substantiated Lewchuk's claim that Warner was the first aggressor. The similarity in circumstances and the proximity in time of the prior incidents would have made the excluded testimony much more probative than the opinion and reputation testimony was, and the excluded testimony would not have been merely cumulative.

Because the rule 403 analysis does not establish that the probative value of the particular evidence in this case would have been substantially outweighed by dangers of unfair prejudice, confusion of issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence, we cannot say that the error in this case was harmless beyond a reasonable doubt. See *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994) (holding that only error which is not harmless beyond a reasonable doubt requires a conviction to be set aside). It was prejudicial error to exclude this evidence.

## VI. CONCLUSION

Finding that the district court committed prejudicial error by excluding admissible testimony regarding specific instances of prior violent conduct by the victim, we reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.