No. S-13-671, we affirm the judgment of the county court setting aside the 1998 health care power of attorney, entering a permanent guardianship and conservatorship for Evelyn, and appointing Robert to serve as guardian and conservator.

AFFIRMED.

———————————

STATE OF NEBRASKA, APPELLEE, V.
WILLIAM W. MATTHEWS, APPELLANT.
___ N.W.2d ___

Filed October 3, 2014.    No. S-12-1052.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Evidence.** All relevant evidence normally is admissible. Evidence which is not relevant is not admissible.

4. **Evidence: Words and Phrases.** Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

5. **Self-Defense.** A determination of whether the victim was the first aggressor is an essential element of a self-defense claim.

6. **Self-Defense: Evidence: Proof.** Evidence of a victim's violent character is probative of the victim's violent propensities and is relevant to the proof of a self-defense claim.

7. **Criminal Law: Trial: Evidence: Appeal and Error.** An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt.

8. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

9. **Self-Defense: Evidence.** When character evidence is being offered to establish whether the defendant's fear was reasonable in a self-defense claim, it is being used subjectively to determine the defendant's state of mind and his beliefs

regarding the danger he was in. When character evidence is used for such a purpose, the defendant necessarily must have known of the incidents or reputation which makes up the character evidence at the time of the assault.

10. **Convictions: Evidence: Appeal and Error.** Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

Petition for further review from the Court of Appeals, Inbody, Chief Judge, and Irwin and Riedmann, Judges, on appeal thereto from the District Court for Hall County, William T. Wright, Judge. Judgment of Court of Appeals reversed, and cause remanded with direction.

Gerard A. Piccolo, Hall County Public Defender, and Matthew A. Works for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

William W. Matthews was convicted of six felonies arising from a shooting involving multiple victims in Grand Island, Nebraska. On appeal, the Nebraska Court of Appeals reversed his convictions for attempted first degree murder and use of a deadly weapon to commit a felony with respect to Kevin Guzman and remanded the cause for a new trial.[1] We granted the State's petition for further review.

The Court of Appeals determined that Matthews' self-defense claim was prejudiced by the exclusion of evidence of Guzman's aggressive and violent character. We disagree that the exclusion of the character evidence caused Matthews prejudice. There was ample evidence before the jury to establish that Guzman was the first aggressor. Thus, the character evidence was cumulative, and its exclusion was harmless error.

---

[1] See *State v. Matthews*, 21 Neb. App. 869, 844 N.W.2d 824 (2014).

We reverse the decision of the Court of Appeals and remand the cause with direction that the relevant convictions and sentences be reinstated.

## BACKGROUND

On April 21, 2011, a witness was driving on Eddy Street when he observed a large crowd of people near 11th and 12th Streets walking toward the center of Eddy Street from the west. The people in the crowd appeared to be arguing. The witness observed a man and woman standing on the east side of Eddy Street, near a garage and an alley. The man was waving a gun, which appeared to be pointed toward the woman. The witness went around the block to obtain a second look, and upon his return, he observed that the crowd had proceeded to the center of the street. A man from the crowd pulled out a gun, waved it, and fired shots at the man and woman. The witness described that at the time the shots were fired, the man near the garage had his gun out, but it was at his side and not pointed in any specific direction. The witness identified Matthews as the shooter at trial.

Another witness observed the altercation while sitting in a parked vehicle. The witness heard a man and woman arguing and yelling across the street. The witness heard the man say, "'Bring it on . . . I'm packing.'" She saw the man lift up his shirt and "flash" a gun. The man took the gun from his waistband and pointed it in the direction of the other side of the street. Two other individuals came running into the middle of the street, and one of the individuals started shooting. The shooter initially fired into the air, but subsequently lowered the gun to chest level and fired toward the man and woman. The witness first testified that she could not remember what the man and woman were doing when the shots were fired. She later testified that they were standing near some bushes facing the shooter. But during cross-examination, the witness admitted that she was unsure whether the man and woman had proceeded down the alley when the shots were fired. The witness identified Matthews as the shooter at trial.

Guzman, the man with the woman on the east side of Eddy Street, was called as a witness for the State at trial. However,

when asked about the altercation with Matthews, Guzman stated, "You know something, I plead the 5th." After a break to allow Guzman to speak with his attorney, Guzman returned to the stand and testified that he had no recollection of the events of April 21, 2011. On cross-examination, Guzman admitted that one of the reasons for his lack of memory was that he was usually under the influence of drugs and alcohol in April 2011. Matthews' counsel asked Guzman whether he was aggressive and violent while using drugs and alcohol in the following exchange:

> [Matthews' counsel:] [Y]ou were constantly under the influence of alcohol and drugs in April of 2011. Am I correct?
>
> [Guzman:] Yes.
>
> [Matthews' counsel:] In your opinion, did that state of affairs in April of 2011 make you aggressive?
>
> [The State]: Objection, Your Honor. Improper character evidence, improper opinion, it's irrelevant, improper under 404, and unfairly prejudicial over 403.
>
> THE COURT: Objection is sustained.
>
> [Matthews' counsel:] Guzman, again, in April of 2011, did those circumstances, being under the influence of drugs and alcohol, make you, in your opinion, violent?
>
> [The State]: Objection, Your Honor.
>
> THE COURT: Sustained.

In his offer of proof, Matthews' counsel explained that he sought to introduce testimony by Guzman that, in Guzman's opinion, being under the influence of drugs and alcohol in April 2011 made him aggressive and violent.

Due to Guzman's lack of memory, his deposition testimony was received at trial and read to the jury. On April 21, 2011, Guzman and his then girlfriend, Mariel Betancourt, walked to a gas station from the home of a cousin of Betancourt. Upon their return, Guzman saw a group of people on Eddy Street who had been "starting . . . all these problems" with him. Guzman had previously seen one of the group's members at a gas station, and the two had exchanged insults. Guzman explained that since that encounter, the group had been trying to "get" him.

When Guzman saw the group across the street, he wanted to "just get it done" by fighting them. The group was yelling at him, so he approached the group and started "talking shit to them," with the intent of inviting the group to fight. Guzman had a gun with him because he had heard of various threats the group had made and wanted to be prepared. But he did not see a gun among the members of the group.

Guzman and the group began exchanging threats. Three members of the group crossed the street and approached Guzman. According to Guzman, the three consisted of "Julio," "MJ," and "Will," i.e., Matthews. Guzman showed his gun, and on cross-examination, he confirmed that he was the first to display a firearm. The three opposite Guzman produced a gun as well. The three pointed the gun in Guzman's face and tossed it back and forth among themselves. Guzman pulled out his gun and pointed it back at the three. Matthews attempted to knock the gun from Guzman's hand, but was unsuccessful. Matthews then took the group's gun and pointed it in Guzman's face, and Guzman pointed his gun at Matthews in return.

The standoff ceased when Guzman was advised that the police were on their way and lowered his gun. He turned his back and began to walk away with Betancourt and Betancourt's cousin Maira Sanchez. Sanchez had seen the altercation between Guzman and the group taking place and had come over to Guzman and Betancourt. Guzman heard a woman scream, "'Shoot it,'" and MJ say, "'Shoot it, so they can see we don't play around.'" After MJ's statement, Guzman heard shots being fired. He turned around and saw leaves falling from nearby bushes. Guzman confirmed that Matthews was the last person he saw holding the group's gun. After the shots were fired, Guzman, Betancourt, and Sanchez went into the home of a relative of Betancourt, and they were called out upon the arrival of police.

Miguel Lemburg, Jr., or "MJ," testified at trial and largely confirmed Guzman's deposition testimony. He testified that a fight was supposed to occur on April 21, 2011, between "Kevin," i.e., Guzman, and Lemburg's friend Jaime Valles. Guzman arrived on the opposite side of the street from

Lemburg's group and started "[t]alking smack." Guzman "flashed" a gun by lifting his shirt. Lemburg, Matthews, and Valles crossed the street, and Guzman pulled out his gun and pointed it at them. Another gun was produced, but Lemburg denied knowledge of its origin. Out of the corner of his eye, Lemburg saw the gun being fired, but he did not see who had the gun, because he ran away. However, he recalled giving testimony at his deposition that Matthews had the gun and that he saw Matthews fire it.

Finally, an investigator with the Grand Island Police Department testified as to statements made by Matthews while in custody. Matthews initially denied any involvement in the altercation, but eventually admitted that he was present at the scene. Matthews stated that a fight was supposed to occur between Valles and Guzman. Guzman came down the alley, and some words were exchanged. Guzman produced a gun from his waistband and waved it. Matthews and Lemburg crossed the street and confronted Guzman. Matthews initially told the investigator that words were exchanged and that everyone left the scene without further incident. But he later stated that Valles produced a gun and started firing it.

Matthews was charged with six felonies arising from the shooting. He was charged with attempted first degree murder and use of a deadly weapon to commit a felony with respect to Guzman, terroristic threats and use of a deadly weapon to commit a felony with respect to Betancourt, and terroristic threats and use of a deadly weapon to commit a felony with respect to Sanchez. At the conclusion of trial, the jury returned a verdict finding Matthews guilty of all six charges. He was sentenced to 3 to 5 years' imprisonment on the attempted murder conviction, 5 to 5 years' imprisonment on each of the use of a deadly weapon convictions, and 20 to 60 months' imprisonment on each of the terroristic threats convictions.

Matthews appealed his convictions to the Court of Appeals. Among his assignments of error, he alleged that the district court erred in excluding Guzman's testimony as to his aggressive and violent character while using drugs and alcohol. The Court of Appeals agreed that the testimony was improperly excluded and found that its exclusion resulted in prejudice

to Matthews' claim of self-defense. It therefore reversed his convictions as to Guzman and remanded the cause for a new trial.

The Court of Appeals further found plain error as to credit for time served and the district court's jury instructions regarding the terroristic threats charges. And it concluded that the instructional error required reversal of the use of a deadly weapon convictions as to Betancourt and Sanchez and remand of the cause for a new trial. But these findings are not at issue before this court. The State timely petitioned for further review solely upon the reversal of Matthews' convictions as to Guzman, and we granted its petition.

## ASSIGNMENT OF ERROR

The State assigns, reworded, that the Court of Appeals erred in reversing Matthews' convictions for attempted first degree murder and use of a deadly weapon to commit a felony with respect to Guzman upon the basis that Matthews was prejudiced by the exclusion of the evidence of Guzman's character.

## STANDARD OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[3]

## ANALYSIS

The State raises two arguments in support of its assertion that the Court of Appeals erred in reversing Matthews' convictions for attempted first degree murder and use of a deadly weapon to commit a felony with respect to Guzman. First, it

---

[2] *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

[3] *Id.*

contends that Matthews failed to establish the relevancy of Guzman's testimony as to his aggressive and violent character while using drugs and alcohol. Second, it asserts that the exclusion of the testimony was harmless error.

[3,4] We first address the State's argument regarding the relevancy of the excluded testimony. Our rules of evidence make clear that all relevant evidence normally is admissible. Evidence which is not relevant is not admissible.[4] Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[5]

[5,6] It is clear that evidence of a victim's aggressive and violent character is relevant to a defendant's claim of self-defense. We have previously observed that a determination of whether the victim was the first aggressor is an essential element of a self-defense claim.[6] And evidence of a victim's violent character is probative of the victim's violent propensities and is relevant to the proof of a self-defense claim.[7]

But the State asserts that Matthews failed to establish the relevancy of the excluded testimony, because he did not ask Guzman whether he was under the influence of drugs and alcohol at the time of the April 21, 2011, altercation. We find no merit to this assertion. Matthews' counsel asked Guzman, "[Y]ou were constantly under the influence of alcohol and drugs in April of 2011. Am I correct?" Guzman responded, "Yes." From this exchange, the jury could reasonably infer Guzman to have admitted to being under the influence of drugs and alcohol on April 21.

The State further contends that Guzman was not qualified to give an opinion as to his character while using drugs and alcohol, because he testified that he could not remember his actions while using drugs and alcohol. But we do not construe

---

[4] See Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008).

[5] See Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2008).

[6] See, e.g., *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000).

[7] See *State v. Lewchuk*, 4 Neb. App. 165, 539 N.W.2d 847 (1995).

Guzman's testimony as indicating that he had no recollection of his character while using drugs and alcohol. Guzman testified only that he would not know what he did the previous night while using drugs and alcohol. He did not testify that he was unaware of the effect of drugs and alcohol on his character or disposition.

[7,8] Although we reject the State's assertions as to the relevancy of the proffered character evidence, we agree that its exclusion was harmless error. An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt.[8] Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[9]

[9] Guzman's testimony as to his aggressive and violent character while using drugs and alcohol was relevant to the issue of whether Guzman was the first aggressor.[10] Although Matthews' counsel asserted at oral argument that the testimony was also relevant to the reasonableness of Matthews' belief that deadly force was necessary, this assertion has no support within the record. No evidence was presented at trial establishing that Matthews had knowledge of Guzman's aggressive and violent character at the time of the shooting. When character evidence is being offered to establish whether the defendant's fear was reasonable in a self-defense claim, it is being used subjectively to determine the defendant's state of mind and his beliefs regarding the danger he was in.[11] When character evidence is used for such a purpose, the defendant necessarily must have known of the incidents or reputation

---

[8] *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[9] *Id*.

[10] See *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983).

[11] See *Lewchuk, supra* note 7.

which makes up the character evidence at the time of the assault.[12] Thus, the excluded testimony bore solely upon the issue of whether Guzman was the first aggressor.

And there was ample evidence before the jury to establish, if it chose to find so, that Guzman was the first aggressor. Guzman testified in his deposition that he approached members of the group in order to fight them and "get it done." He confirmed that he was inviting the group to fight physically. Lemburg testified that Guzman arrived and started "[t]alking smack." A witness heard Guzman say, "'Bring it on . . . I'm packing,'" and saw him display a gun, pull it out, and point it in the direction of the other side of the street. Further, the testimony of both Guzman and Lemburg and the statements made by Matthews to the investigator established that Guzman was the first to display a firearm.

[10] Based upon the above evidence, we conclude that Guzman's testimony as to his aggressive and violent character while using drugs and alcohol was cumulative to other evidence which tended to establish that he was the first aggressor. As such, the exclusion of the testimony was harmless error.[13] Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[14] We therefore reverse the Court of Appeals' decision and remand the cause with direction that Matthews' convictions and sentences for attempted first degree murder and use of a deadly weapon to commit a felony with respect to Guzman be reinstated.

## CONCLUSION

Although Guzman's testimony as to his aggressive and violent character while using drugs and alcohol was relevant to Matthews' self-defense claim and properly admissible, its exclusion did not cause Matthews prejudice. Guzman's testimony was cumulative to other evidence which tended to

---

[12] See *id*.

[13] See *Sims, supra* note 10.

[14] *Kinser, supra* note 6.

establish that he was the first aggressor. Consequently, its exclusion was harmless error. We reverse the decision of the Court of Appeals and remand the cause with direction that the relevant convictions and sentences be reinstated.

Reversed and remanded with direction.

———————

Larry L. Rice, appellant and cross-appellee, v.
Joe K. Bixler and Bonnie L. Bixler Szidon,
appellees and cross-appellants, and
Donald M. McDowell et al., appellees.

___ N.W.2d ___

Filed October 3, 2014.    No. S-13-699.

1.  **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.

2.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3.  **Statutes.** Statutory interpretation presents a question of law.

4.  **Mines and Minerals: Title.** In general, dormant mineral statutes were enacted to address title problems that developed after mineral estates were fractured.

5.  **Statutes: Intent: Appeal and Error.** In interpreting the requirements of a statute, an appellate court looks to the intent and purpose of the statute.

6.  **Statutes.** Statutory language is to be given its plain and ordinary meaning.

7.  **Statutes: Legislature: Intent: Appeal and Error.** An appellate court's duty in discerning the meaning of a statute is to determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

8.  **Statutes: Words and Phrases.** As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.

9.  **Statutes: Appeal and Error.** An appellate court must not read anything plain, direct, and unambiguous out of a statute.

Appeal from the District Court for Sioux County: Travis P. O'Gorman, Judge. Affirmed in part, and in part reversed and remanded with directions.